8 WS 382
213　　　86

8 WS 382
32 SC 219

## Commonwealth *against* Zephon.

The 1st section of the Act of 3d February 1843, transferring the jurisdiction of the criminal court to the court of Oyer and Terminer, General Jail Delivery and Court of Quarter Sessions for the city and county of Philadelphia, is not unconstitutional.

ERROR to the Court of Oyer and Terminer and General Jail Delivery and the Court of Quarter Sessions of the Peace in and for the city and county of *Philadelphia,* in which the defendant, Zephon, was indicted and convicted of murder in the first degree. The following entries appeared on the docket:

Now, February 14th, 1844, the court order and direct that the Honourable James Campbell, Associate Judge of said court, shall hold the Court of Oyer and Terminer and General Jail Delivery and Quarter Sessions of the Peace of the city and county of Philadelphia, for the trial of indictment and all other cases for the ensuing Term of March 1844.

*March Term* 1844.

Monday, March 4th, 1844. The court met. Present, Judges King, Jones, Campbell and Parsons.

Commonwealth of Pennsylvania ⎫
　　　　　　*v.*　　　　　　　　　⎬
Samuel Zephon, *alias* Brainard. ⎭

No. 12, March Term 1844. Sur charge of murder of Cuffee Todd. March 14th, 1844, true bill. March 25th, 1844, the defendant being arraigned pleads not guilty, &c. Attorney-General similiter et issue.

Now, March 30th, 1844, the court order and direct that the Honourable Anson V. Parsons, Associate Judge of said court, shall hold the Court of Oyer and Terminer and General Jail Delivery and Quarter Sessions of the Peace of the city and county of Philadelphia, for the trial of indictment and all other cases for the ensuing Term of May 1844.

[Commonwealth v. Zephon.]

*May Term* 1844.

Monday, May 6th, 1844. The court met. Present, Judges King, Jones, Campbell and Parsons.

Commonwealth of Pennsylvania
*v.*
Samuel Zephon, *alias* Brainard.

Sur charge of murder. May 10th, 1844, defendant convicted of murder of first degree. June 8th, 1844, defendant sentenced.

This case was argued by *J. A. Phillips* and *Barton* for the prisoner, and by *F. Wharton* and *Kane* for the Commonwealth, and now re-argued by *J. A. Phillips* for the prisoner and *Kane* for the Commonwealth.

For the prisoner were cited *Constit., Art. V. sec.* 1, 5; *Act 3d February* 1843; *Act 14th April* 1834, *sec.* 58, *Purd.* (1841) 229; *Act 14th April* 1834, *sec.* 110, *Purd.* (1841) 615; *Kline's Case,* (2 *Penn. Law Jour.* 324); *Act 4th April* 1843, *sec.* 5; *Flanagan's Case,* (3 *Law Jour.* 477).

For the Commonwealth were cited, 9 *Serg. & Rawle* 269; 1 *Binn.* 424; *Act 19th March* 1838; *Act 25th February* 1840; *Purd.* (1841) 266; *Act 16th March* 1819, *sec.* 14; 3 *Hawk.* 31; 2 *Sm. Laws* 468; 2 *Bac. Ab.* 472; 6 *Sm. Laws* 121; 7 *Ibid.* 228; 3 *Binn.* 577; 7 *Serg. & Rawle* 427; 9 *Ibid.* 296; 12 *Ibid.* 340; 4 *Binn.* 117.

The opinion of the Court was delivered by

BURNSIDE, J.—Prior to the adoption of the Constitution of 1790, Pennsylvania had no law Judges in her Courts of Common Pleas or other inferior courts, except for some time in the city and county of Philadelphia. Nor were all her Judges of the Supreme Court, at times, gentlemen of the legal profession. In the convention of 1790 there were lawyers of high professional attainments, as well as eminent statesmen. A change and a reform of the Judiciary was a primary object with that convention. To have a law Judge to preside in the courts of each county was deemed of the first importance. Prior to 1790, when a Court of Oyer and Terminer and General Jail Delivery was held in the interior, a Judge of the Supreme Court had to order it. They were obliged to travel in every direction for that purpose. They had also to hold Courts of Nisi Prius in every county then organized for judicial purposes in the State. The Courts of Common Pleas, Quarter Sessions, and Orphans' Courts were held by the justices of the peace.

The 5th article of the Constitution of 1790 relates to the judiciary. The 1st section provides that the judicial power of this Commonwealth shall be vested in a Supreme Court, in Courts of

[Commonwealth v. Zephon.]

Oyer and Terminer and General Jail Delivery, in a Court of Common Pleas, Orphans' Court, Register's Court, and a Court of Quarter Sessions of the Peace for each county, in justices of the peace, *and in such other courts as the Legislature may from time to time establish.* The 4th section declares that until it shall be otherwise directed by law, the several Courts of Common Pleas shall be established in the following manner: The Governor shall appoint in each county not fewer than *three* nor more than *four* Judges, who during their continuance in office shall reside in such county. The State shall be divided by law into circuits, *none* of which shall include more than *six* nor fewer than *three* counties. A President shall be appointed of the courts in each circuit, who during his continuance in office shall reside therein. The President and Judges, any two of whom shall be a quorum, shall compose the respective Courts of Common Pleas.

By the 5th section, the Judges of the Court of Common Pleas in each county shall by virtue of their offices be justices of Oyer and Terminer and General Jail Delivery for the trial of capital and other offenders therein; any two of the said Judges, *the President being one,* shall be a quorum; but they shall not hold a Court of Oyer and Terminer or General Jail Delivery in any county when the Judges of the Supreme Court or any of them shall be sitting in the same county. Although this Constitution declared that there should be no less than *three* Judges commissioned in each county, yet the Legislature reduced the number to *two.* It declared that there should not be less than *three* counties in each circuit; but the Legislature, as population increased and necessity required it, in some instances made one county a circuit, in others *two,* besides creating other courts, and this under the words " until otherwise established by law." No one questioned the power of the Legislature to make these changes under the Constitution of 1790, when the public interest required it. Let us see whether the power of the Legislature is not equally extensive under the Constitution of 1838–9.

The 1st section of the 5th article provides—The judicial power of this Commonwealth shall be vested in a Supreme Court, in Courts of Oyer and Terminer and General Jail Delivery, in a Court of Common Pleas, Orphans' Court, Register's Court, and a Court of Quarter Sessions of the Peace, for each county; in justices of the peace, *and in such other courts* as the Legislature may from time to time establish.

The 2d section declares the Judges of the Supreme Court, the President Judges of the several Courts of Common Pleas and of such other courts of record as are or shall be established by law, and all the other *Judges learned in the law,* shall hold their offices for ten years, if they shall so long behave themselves well; and the 3d section provides, *"until otherwise directed by law, the Courts of Common Pleas shall continue as at present established."* By the 5th

section, the Judges of the Court of Common Pleas in each county shall by virtue of their offices be justices of Oyer and Terminer and General Jail Delivery for the trial of capital and other offenders therein; any *two* of the said *Judges, the President being one, shall be a quorum*. But they shall not hold a Court of Oyer and Terminer or Jail Delivery in any county when the Judges of the Supreme Court or any of them shall be sitting in the same county. The amended Constitution gives the Legislature power from time to time to establish other courts, and it expressly provides that until otherwise directed by law, the Courts of Common Pleas shall continue as at present established.

The power of the Legislature is clear, that they may change, alter and establish the Court of Common Pleas as they may deem wise and expedient. The Constitution of 1838–9 does not abridge this power. This Court is to remain as it was when the Constitution was adopted, *until otherwise directed* by law. It is manifest that a sacred principle of both Constitutions was, that when the Judges of the Court of Common Pleas, by virtue of their offices as Judges of the Common Pleas, held a Court of Oyer and Terminer, one of them, to constitute a quorum, should be learned in the law. The object was to secure to a prisoner and the public, in all cases capital before the amelioration of the penal code, the advantages of a presiding Judge learned in the law.

In the winter of 1843 the Legislature deemed it necessary to reorganize the Criminal Courts of this city and county. By the Act of 3d February 1843 they abolished the then Criminal Court, which had been but recently established, a court not mentioned in the Constitution. The 1st section of the Act transferred all the powers, jurisdiction and authority given to the Criminal Court, and vested them in the Court of Oyer and Terminer, General Jail Delivery, and Court of Quarter Sessions of the Peace in and for the city and county of Philadelphia. When the amended Constitution was adopted, the three Judges of the Common Pleas in the city and county were Judges learned in the law, and as such recognised in the 2d section of the 5th article of the Constitution to hold their commissions for ten years. By the 2d section of the Act of 1843 the Governor was directed to nominate and the senate to confirm a fourth Judge for this court learned in the law to serve for the term of ten years. This was done. The 3d section provided that the Court of Oyer and Terminer and General Jail Delivery and Quarter Sessions of the Peace for the city and county of Philadelphia should hold six terms or sessions in the course of each year. The 4th section authorised any one of these four Judges, all of whom were learned in the law, to have *full power* and authority to hold said court for the trial of all indictments except in cases of homicide, when there shall be two of the said Judges. Each of the Judges was authorised to hold separate sessions at the same time for the trial of criminal cases over which the court

[Commonwealth v. Zephon.]

had jurisdiction. And the 5th section directed this court at least 10 days before the term or at the commencement of the year to decide which of the Judges should hold the Courts of Oyer and Terminer and General Jail Delivery and Quarter Sessions of the Peace for the trial of indictments and other cases of which one Judge has jurisdiction by this Act; and in all cases in which by the same two Judges are required to hold the Oyer and Terminer, the designated Judge holding the court shall select one of the others to hold the court with him, and the said Judge, who it has been decided shall hold the court, shall preside during the session. Motions for a new trial and arrest of judgment are to be heard before the whole court, if either party request it.

The unfortunate prisoner Samuel Zephon was tried before Judge Campbell, assisted by Judge Parsons, at March Term 1844, for the crime of murder, convicted and sentenced to be hanged on the 8th June 1844; and the error assigned is that the court had no jurisdiction; that the Act of 1843 is unconstitutional and void, and that no Court of Oyer and Terminer could be held for the trial of capital offenders, without the President (Judge King) being a member of the court. In the case of *The Commonwealth* v. *Clark*, the Supreme Court declared that " a Constitution is not to receive a technical construction like a common law instrument or a statute. It is to be interpreted so as to carry out the great principles of the government, not to defeat them." It must be a clear and unequivocal case to induce the court to pronounce the Act of the Legislature unconstitutional. *Commonwealth* v. *Duquet*, (2 *Yeates* 493) ; *Eakin* v. *Raub*, (12 *Serg. & Rawle* 320).

The Constitution provides that until otherwise directed by law the courts of Common Pleas shall continue as at present, and they have express power to create such other courts as they may from time to time deem expedient. By the Act of 1843 they created a Court of Oyer and Terminer. They prescribed the necessary number for the trial of indictments in that court in case of homicide, and they preserved the great object of the Constitution, a law Judge to preside and another law Judge to assist him. 'The Constitution of 1776 declared that " *Trials by jury shall remain as heretofore.*" So did the Constitution of 1790; yet the Legislature have been extending the jurisdiction of Justices of the Peace until recently in civil cases. They passed a compulsory arbitration law. It is true, they gave an appeal to the Common Pleas, but it is under restrictions as to bail and the payment of costs. The Legislature can add and change jurisdiction, and I can see no good reason, if they could make a Court of Oyer and Terminer, why they may not add jurisdiction to the Judges of the Common Pleas for that purpose, preserving the safety of the citizen in having law Judges to preside, which is according to the spirit and object of the Constitution.

Judgment affirmed.