In the Matter of the PENNSYLVANIA HALL.

The 13th section of the act of June 16, 1836, giving damages for property destroyed by mobs, and regulating the mode of their assessment, is constitutional.

The Court of Criminal Sessions was a constitutional court.

The jurisdiction given by the act of 1836 to the Mayor's Court was transferred to the Court of Criminal Sessions, and from that to the Court of General Sessions, and from that to the Court of Quarter Sessions.

The act of 1840 restored and validated the proceedings under the said act of June, 1836, which would otherwise have been avoided by its repeal, in 1839.

Formal exceptions and clerical errors not taken in the court below, where they may be amended, are waived.

CERTIORARI to the Quarter Sessions of Philadelphia.

*April* 22, 23. On the 4th of June, 1838, Webb and others, members of the board and trustees of the Pennsylvania Hall Association, presented their petition to the Court of Criminal Sessions for the city and county of Philadelphia, setting forth the act of June, 1836, relating to compensation for the destruction of buildings, &c., by a mob or riot in the city or county of Philadelphia; and averring that the association of which they were trustees had

erected a building in the said city, which was dedicated and occupied for free discussion of liberty, slavery, &c. That on the 16th of May, the hall was assailed by a mob, and the windows broken; whereupon the petitioners applied to the mayor and sheriff, who received the keys, but that no attempt at resistance of the mob was made by them, and that the building was broken open, and burned by the mob,—and prayed the appointment, in conformity to said act of Assembly, of six disinterested persons to ascertain and report the amount of their said loss, and otherwise to enforce the said act.

On this petition, an inquest was appointed, and at subsequent periods, vacancies in their number were supplied by the court, to which, in February, 1840, they reported that they were equally divided on the question whether the petitioners or owners had any active or immediate participation in the mob or riot, and prayed to be discharged.

In the Court of General Sessions certain amendments were then made in the petition, and another inquest appointed, five of whom reported the amount of the loss to be $33,000, and that the owners had no participation: one of the number reported adversely. On exceptions being filed, (not to the jurisdiction,) the court refused to confirm the report. In September, 1842, on motion of the attorney for the petitioners, a rule was granted on the county commissioners, to show cause why an inquest to ascertain, &c., should not be appointed; on the return-day, the court appointed an inquest, in which subsequent vacancies were supplied.

In June, 1843, this inquest reported to the Court of Quarter Sessions of the Peace for the city and county of Philadelphia, that the damage occasioned by the destruction of the building by the said mob *or* riot, on the night of the 17th of May, was $22,658 27, and that the owners of the building had not any immediate or active participation in the said mob or riot.

A reference was made in the argument to certain acts of Assembly, the dates of which are material to the points raised in the cause.

The act of June 16, 1836, was repealed by that of July 2, 1839, but the thirty-sixth section, with all proceedings under it, was restored by the act of April 7, 1840.

By the act of the 19th March, 1838, the Court of Criminal Sessions was established with all the powers and exclusive jurisdiction then exercised by the Mayor's Court, within the city of Philadelphia.

By the act of the 25th February, 1840, the court of General

S

Sessions was established, and the exclusive jurisdiction exercised by the Criminal Sessions given to it.

By the act of the 3d of February, 1843, this court was abolished, and causes undetermined were directed to be decided by the Oyer and Terminer General Jail Delivery and Quarter Sessions of the Peace.

In this court, five exceptions, with eleven specifications of error were assigned, of which an abstract is here given.

1. That the act of 1836 is unconstitutional, in substituting an inquest of six men to determine facts out of court, instead of a jury of twelve to try the matter in court.

2. The Court of Criminal Sessions was illegal, since the act creating it virtually annulled the Quarter Sessions, which was a constitutional tribunal.

3. The inquest was illegal, for want of a new petition, after the report on the one filed; and because of the discontinuance of the cause by the repeal of the act of Assembly. That there was no such court as the Quarter Sessions for the *city and county* of Philadelphia; the court certifying this record being the Quarter Sessions for the *county*, &c. That the jurisdiction under the act was not transferred further than to the Criminal Sessions, if so far.

4. That it did not appear that the court had examined the facts or the law, previously to the confirmation of the report; and that the names of the owners did not appear on the petition, which was material, since the court were to decide on their participation.

5. That the petition alleged the damage occurred on the 16th, and the inquest laid it on the 17th; and that the petition avers an injury by a mob, but the inquest does not find whether by a mob *or* riot.

These exceptions were argued at great length, by

*P. A. Browne,* for the County Commissioners.—He also contended that the act was not only unconstitutional, in depriving the parties of the trial by jury, but also in compelling parties not in any way concerned in the riot to pay for the damage thereby.

*E. K. Price* and *Newcombe,* contrà.—This was not a jury to try facts, but an inquest to assess damages, between the public and individuals, and which the public, by their legislature, has authorized. These inquests were known to the common law before our constitution, as in writs of *ad quod damnum,* (Fitzh. 509,) and may therefore still be used under the constitution, as is common in street and road juries, and sheriffs' inquests, which have always been composed of six men; Case of Spring Garden St., 4 Rawle, 194;

Bradf. Law, 13, 3 Sm. 512—518; Lancaster Turnpike Act, 1792, 3 Dall. 251; 5 Binn. 481. So in case of damages by the state internal improvements, under the act of 1827; Commonwealth v. Fisher, 1 Penna. Rep. 465. Now they are reduced to three; Act of 1830. So by the Lateral Railroad Act, six are to assess, and this has been decided to be constitutional; Lloyd v. Harvey, 10 Watts, 63. The proceedings in lunacy, and under the arbitration law, would be equally subject to this objection. The matter was fully discussed in Beekman v. Saratoga Railroad, 3 Paige, 75; Livingston v. Moore, 7 Peters, 469.

The question as to the court was settled by Zephon's case, 8 Watts & Serg. 386. The other exceptions ought not to be noticed; there being no exceptions below, they are waived; Allentown Road, 5 Whart. 442. And so of clerical errors which might have been corrected; Dyott's Estate, 2 Watts & Serg. 564.

There was no occasion for a new petition; the inquest having been set aside, the matter remained as if it had never been granted; Roads and Bridges, 2 Whart. Dig. 487, pl. 118; Cunningham v. Gardner, 4 Watts & Serg. 120—124. So where the inquest cannot agree, under the Landlord and Tenant act.

The act was repealed by accident, and when that was discovered it was reinstated.

*May* 3. ROGERS, J.—It is declared by the legislature, in the act of the 16th of June, 1836, that in case any dwelling-house or other building, &c., shall be injured or destroyed in the city and county of Philadelphia, in consequence of any mob or riots, &c., the owner or his agent may apply, if in the county, to the Court of Quarter Sessions, and if in the city, to the *Mayor's Court,* who shall thereupon appoint six disinterested persons, &c., to ascertain and report the amount of the loss, and also whether the owner had any immediate or active participation in the mob or riot. And a report being made and confirmed by the court, on examination of the case in suit, it was ordered that it be certified to the county commissioners, who shall forthwith draw their warrant on the treasurer for the amount so awarded.

(His honour then stated the proceedings.)

First, it is contended that the thirty-sixth section of the act of the 16th of June, 1836, is unconstitutional and void. It is urged that the right of trial in *court* by a jury of *twelve* men, is secured to the citizens of Pennsylvania by the common law. That it is a reserved judicial right of the people, guarantied by the Constitution

of the United States, and of this state. And that this right has been violated by substituting in lieu of a trial *in court* by a jury of twelve men, an inquest of six men *out* of court. In support of this view of the case, reliance is had on the ninth article, sixth section of the constitution of Pennsylvania, which declares, that the "trial by jury shall be as heretofore, and the right thereof remain inviolate." But the answer to these suggestions is, that the article referred to relates to the trial of issues of fact in civil and criminal cases in courts of justice. It contains nothing expressed or implied which inhibits the legislature from ascertaining damages, as before allowed, by commission, on the award or inquest of a less number than twelve men out of court. The right of trial by jury, which is justly esteemed the palladium of our liberties, especially in criminal cases, must be preserved inviolate, but this claim has never been so construed as to prohibit an alteration in the manner of choosing or summoning jurors, or in making any other change whereby, in the judgment of the legislature, it is made a more effectual instrument for the advancement of justice, and the preservation of our rights. But this would be the effect if construed according to the letter and not the spirit. Whether the legislature would have power, under the constitution, to alter the number of jurors on trial in court, or dispense with unanimity in finding their verdict, will be a grave question if it should ever arise, but which it is unnecessary now to decide. The constitution does not say, that in all cases where the facts have heretofore been found by a jury or inquest, they shall continue to be so ascertained. The trial by jury shall be as heretofore, that is, in all civil or criminal cases in court, this mode of trial shall be preserved and remain inviolate. But be this as it may, yet we think this case stands clear of all constitutional difficulty, for this mode of ascertaining damages has been usual with the legislature, both before and after the constitution was adopted, in a great variety of cases, and to such an extent that it would do irreparable mischief now to question it. Thus in case of roads, public and private, commissions of lunacy, and other cases to which reference has been made, and which it is unnecessary particularly to enumerate. Here there is no change in the right of trial by jury, for such a right never existed, and consequently no right is violated. At common law, counties were not liable at all for mischief done by lawless individuals. When a remedy is given for such injuries, it is the creature of statutes, as in the statute of Hue and Cry, and in the act of the 16th June, 1836. With the policy of the act we have nothing to do, although we con-

ceive there would be no difficulty in showing that tax-payers have a right to be indemnified for losses occasioned by lawless outrage, whenever the public are unable or unwilling to protect property. The innocent may, it is true, be compelled to pay for the acts of the guilty. But this effect is not peculiar to the case, but necessarily results from the structure of society, and the nature of all institutions; of this many examples could be readily given.

The second exception, that the Court of Criminal Sessions of the city and county of Philadelphia, to which the petition was presented, was illegally constituted, is entirely ruled in Zephon's case, 8 Watts & Serg. 382. The transfer of the jurisdiction of the Court of Oyer and Terminer, &c. to the Criminal Court, is decided to be constitutional. If the legislature had undertaken to abolish the courts established by the constitution, it would have presented a different question. But this they have not attempted to do; these courts still remain, and all they have done was to create another court, which they are authorized to do by the express words of the constitution itself. But admitting the force of this argument in the utmost latitude claimed for it, still it does not touch this case, because this is not an Oyer and Terminer but a Mayor's Court, in whom the power was first vested. This court the legislature had an undoubted right to abolish, and to vest the jurisdiction in such other courts as they may deem right. The Mayor's Court is not a court recognised in the constitution. It existed by virtue of legislative enactments. Although it has common jurisdiction over the same offences, if committed within the limits of the city, yet it cannot be held, with any show of plausibility, that this makes a Court of Quarter Sessions within the meaning of the constitution. No person heretofore has ever questioned the right of the legislature to abolish the Mayor's Courts of Philadelphia, Lancaster, and Pittsburgh, or supposed it necessary, when a borough was created a city, that such a court was an indispensable accompaniment. But this would be the result of the argument, that a Mayor's Court is a Court of Quarter Sessions.

The third exception, that the report of the inquest is illegal and void, the inquest having been appointed by a court having no power or authority to appoint the same, and that the report was made to a court having no authority to receive the same, is equally untenable. That there is nothing in the first part of the exception has been already shown; nor is there any weight in the last. The Court of Quarter Sessions for the city and county of Philadelphia, to which the report was made, it sufficiently appears, was

the constitutional court, and the only one to which it could possibly be made. There is an error of fact in the specification, because there was virtually a new petition previous to appointment of the inquest which assessed the damages. This appears on the amended paper book. We see, therefore, no semblance of error in the court which appointed the inquest, nor in the manner of their appointment; nor is it objectionable because they state the damage to be done, in the alternative, by a mob or riot. In this they pursue the words of the act. One other objection, under this head, must be noticed; I allude to the repeal of the act. It clearly appears the act of the 16th June was repealed, and this would have presented an insuperable difficulty in the way of the recovery of damages, had it not been for the curative effect of the subsequent act of the 7th April, 1840, which, with that regard to justice which always governs our legislature, when not deceived, restored the 36th section, and all proceedings under it. By the terms of the latter act, all proceedings under the 36th section are to be deemed valid and legal, and are ratified and confirmed as fully and effectually in all respects as if they had never been repealed. That the legislature had the right to pass such an act, cannot be denied, and it is equally clear that they were bound to do so on every principle of equity and justice. The case, therefore, must be considered as if there had been no repealing act, and this removes all the objection and scruple on the third exception, which otherwise, it must be admitted, would have been entitled to great attention.

The remaining exceptions are but repetitions of the first three, and do not require any separate examination. In conclusion, I must observe, that many of the specifications are but matters of form, which, however valid, if taken in the court below, cannot avail the appellant in this court. They must be deemed to be waived, unless assigned in that tribunal, which would have the power to amend.

                                                    Proceedings affirmed.