## COMMONWEALTH *vs.* ROBERT WOOD.

On the trial of an indictment on *St.* 1845, *c.* 27, for procuring a miscarriage, the Commonwealth may introduce evidence of the health and spirits of the patient, and of stains and marks upon her bedclothes, a month afterwards.

On the trial of an indictment on *St.* 1845, *c.* 27, for procuring a miscarriage, after evidence introduced by the defendant that the patient was pregnant some months after the operation is alleged to have been performed, the Commonwealth may prove by her that she had sexual intercourse with the defendant between the times of the alleged operation and of the subsequent pregnancy.

Any wicked or base motive is sufficient malice to support an indictment on *St.* 1845, *c.* 27

for procuring a miscarriage; and the consent of the patient or a desire to screen her from disgrace is no justification.

It is not necessary, to support an indictment on *St.* 1845, *c.* 27, for procuring a miscarriage, to prove that the patient was quick with child.

*It seems,* that an indictment on *St.* 1847, *c.* 27, for procuring a miscarriage, cannot be maintained, if the fœtus had previously lost its vitality so that it could never have matured into a living child.

On the trial of an indictment for procuring a miscarriage, the judge instructed the jury that the patient was not technically an accomplice, and therefore, strictly speaking, the rule in relation to the corroboration of an accomplice did not apply, but inasmuch as she in a moral point of view was implicated, it would be proper for the jury to consider that circumstance in its bearing upon her credibility; that it was also their duty to consider all the evidence in the case tending to contradict her, as affecting the credit they would give to her, her credibility being entirely a question for them; and declined to instruct them that if she swore falsely upon any material point in the case, it so far discredited her whole testimony that they should not place any reliance upon it.   *Held,* that the defendant had no ground of exception.

An indictment on *St.* 1845, *c.* 27, for procuring a miscarriage, need not allege that the child with which the patient was pregnant was alive, or that she was quick with child; nor whether she died or not in consequence of the operation.

An indictment on *St.* 1845, *c.* 27, for procuring a miscarriage, is sufficient, which alleges that the defendant at a certain time and place maliciously and without lawful justification did force and thrust a certain metallic instrument, which he had and held in his hand, into the womb and body of a certain woman by the name of A. B., she being then and there pregnant with child, with the wicked and unlawful intent of the defendant thereby to procure her to miscarry and prematurely to bring forth the said child with which she was pregnant as aforesaid, and she the said A. at the same time and place, by means of the said forcing and thrusting of said instrument into her womb and body in manner as aforesaid, did bring forth said child, of which she was so pregnant, dead; and is not open to objection, as not alleging that the defendant used the metallic instrument, nor who the woman was or what was her name, nor that she brought forth the child prematurely, nor brought it forth dead in consequence of what the defendant had done.

INDICTMENT on *St.* 1845, *c.* 27, averring that the defendant on the 15th of January 1857 at Ludlow, " with force and arms, maliciously and without lawful justification, did force and thrust a certain metallic instrument, which he the said Wood then and there had and held in his hand, into the womb and body of a certain woman by the name of Sarah Chaffee, she the said Sarah being then and there pregnant with child, with the wicked and unlawful intent of him the said Wood then and there thereby to cause and procure the said Sarah to miscarry and prematurely to bring forth the said child with which she was then and there pregnant as aforesaid ; and she the said Sarah " at said place and time, " by means of the said forcing and thrusting of said instrument into the womb and

body of the said Sarah in manner aforesaid, did bring forth said child, of which she was so pregnant, dead ; against the peace, and contrary to the form of the statute in such case made and provided."

At the trial in the court of common pleas in Hampden, before *Morris*, J., Sarah Chaffee, called as a witness for the Commonwealth, testified that in December 1856 she discovered herself to be pregnant by the defendant, (who was a practising physician,) and told him of her situation ; and he said he would marry her, but could not do so immediately on account of the recent death of his wife, and then proposed to procure an abortion, to which she at first objected, but ultimately waived her objections ; and he on three subsequent occasions at her own room thrust a metallic instrument into her person to procure a miscarriage, the last of which, about the middle of January, proved effectual, and the defendant, several days afterwards, took the abortion from her ; that her clothing and bed were saturated with the flow from her person, and a roll of the bloody clothing and bedding was put away in the closet in her room.

Harriet Graves testified that about the middle of February 1857 she visited Mrs. Chaffee, and slept one night in the same bed with her ; that Mrs. Chaffee looked unusually pale and feeble, and sighed and groaned a good deal ; that the witness made the bed the next morning, and saw red stains upon it, through the feather bed and upon the straw bed, which she thought were quite recent, some of them more recent than others. This testimony was admitted against the defendant's objection.

Hannah Stebbins testified that she lived in the same house with Mrs. Chaffee in the winter of 1856–7 ; that about the 20th of January, Mrs. Chaffee being confined to her bed, the witness was called to her aid, and found she had fainted ; that after she began to get well, the witness found her washing stains from the tick of her feather bed, and noticed stains upon her straw bed. This testimony also was admitted against the defendant's objection.

Olivet Morse, called by the defendant, testified that she had a

conversation with Mrs. Chaffee in May 1857, in which the latter told her " she did not know but she might be then in a family way; she had hard thoughts that she was."

To explain this testimony, and show that it was not inconsistent with the abortion in the preceding January, the district attorney recalled Mrs. Chaffee, and asked of her whether, after the abortion in January and before the conversation with Mrs. Morse, the defendant had sexual intercourse with her ?   To this inquiry the defendant objected, but the court overruled the objection, and the witness answered in the affirmative.

Caroline Stocking, a witness for the defendant, testified that Mrs. Chaffee told her she sent for the defendant and asked him to produce a miscarriage to save her from exposure.

If Mrs. Chaffee was pregnant, there was no evidence tending to show that the child would not have been born alive in due time, but for the act of the defendant in producing miscarriage.

The defendant requested the court to instruct the jury " that they could not convict the defendant unless they were satisfied beyond all reasonable doubt that the acts performed by the defendant were performed maliciously, and that to be done maliciously they must have been done either out of a spirit of wanton cruelty or wicked revenge; that they could not convict the defendant unless they were satisfied beyond all reasonable doubt that the acts performed by him were performed without lawful justification, and that such lawful justification would exist if the child with which Sarah Chaffee was pregnant was not a live child ; that the jury could not convict the defendant unless they were satisfied that, in doing what was alleged to have been done by him, he did not act according to his best knowledge and judgment as a physician, and as he honestly believed would be for the best good of his patient, Sarah Chaffee ; that inasmuch as the indictment alleges the said Sarah to have been pregnant with child, and does not allege said child to have been dead, it is to be considered as alleging said child to have been alive, and if the jury were satisfied the child was dead they could not convict the defendant, because there was a fatal variance

between the allegation and proof; that if the jury were satisfied that the said Sarah wilfully swore falsely upon any material point in the case, it so far discredited her whole testimony that they should not place any reliance on it; that no offence was committed if the child with which said Sarah was pregnant was not a live child; that the said Sarah was so far an accomplice, that the jury could not convict the defendant upon her uncorroborated testimony; or (if the last ruling was refused) that the jury could not convict the defendant, if they were satisfied that she was an accomplice in the commission of the offence, and that her testimony was not corroborated upon some material point by other evidence in the case; also that she was an accomplice, if she assented at the time to the defendant's acts.'

The judge instructed the jury what points it was necessary for the Commonwealth to establish in order to sustain the allegations of the indictment; and so far as related to the particular instructions requested by the defendant, instructed them in substance as follows:

" That to convict the defendant, they must be satisfied beyond reasonable doubt that Mrs. Chaffee was at the time of the alleged offence pregnant with child; that although at the common law, as held in this commonwealth, it was no offence to procure an abortion, unless it was alleged and proved that the mother was ' quick with child ' — that being the stage of pregnancy which, by the common law, was considered to be the commencement of the child's life — yet that under the *St.* of 1845, *c.* 27, it was not necessary to allege in the indictment or to offer affirmative proof that the child had life.

" That it was not enough for the Commonwealth to prove that the defendant procured the abortion; but the jury must be satisfied that the act was malicious, and without lawful justification; that to constitute the act malicious within this statute it was not necessary to show, as in a prosecution for malicious mischief, that the defendant was impelled to it by a spirit of wanton cruelty or wicked revenge; but that it would be malicious, within the meaning of this statute, if done with any wicked and base motive, offensive to good morals and injurious

to society; that the consent of the female would not of itself constitute a lawful justification, or divest the act of its malicious character; but that if the defendant, a practising physician, in the exercise of his best skill and judgment, honestly believed that the act was necessary to preserve the mother from great peril to life or health, and in good faith procured a miscarriage with that view, he could not be convicted; and in this connection, if there had been any evidence tending to show that the fœtus with which the woman was pregnant, if pregnant at all, had lost all vitality, so that it never could have matured into a living child, it would be for the jury to consider whether that fact would not show such a cause for its removal, as might be justifiable and relieve the defendant from the imputation of malice; but that if the defendant was actuated solely by a desire to screen the female or himself from exposure and disgrace, such a motive would not divest the act of malice, or furnish a lawful justification.

" In regard to the credibility of Sarah Chaffee as a witness, the court instructed the jury that she was not technically an accomplice, and therefore, strictly speaking, the rule in relation to corroboration of an accomplice did not apply, but inasmuch as she was in a moral point of view implicated in the transaction, it would be proper for the jury to consider that circumstance in its bearing upon her credibility; that it was also their duty to consider all the evidence in the case tending to contradict her testimony, or to show that she had made statements conflicting with her present testimony, as affecting the credit they would give to her, her credibility being entirely a question for them."

The jury found the defendant guilty, and he alleged exceptions, and in this court moved that judgment be arrested for the following reasons:

" 1st. Because said indictment does not allege that the defendant used the metallic instrument therein mentioned.

" 2d. Because said indictment does not properly and sufficiently allege who the woman mentioned therein was, or what was her name

" 3d. Because said indictment does not allege that the child with which said woman was pregnant was a live child, or that said woman was quick with child.

" 4th. Because said indictment does not allege whether the said woman did or did not die in consequence of what the defendant is alleged to have done; " although the *St.* of 1845, *c.* 27, makes the crime felony in the one case, and misdemeanor in the other, and imposes different punishments.

" 5th. Because said indictment does not allege that said woman brought forth said child prematurely, or made a miscarriage of the same.

" 6th. Because said indictment does not allege that said woman brought forth the said child dead, in consequence of what the defendant is alleged to have done."

*W. G. Bates & E. W. Bond,* for the defendant.

*S. H. Phillips,* (Attorney General,) for the Commonwealth.

THOMAS, J. This case is before us upon exceptions to the admission of evidence by the presiding judge at the trial, to his instructions to the jury, and upon a motion for arrest of judgment.

1. As to the admission of evidence. The testimony of Mrs. Graves was rightly admitted. The objection that the facts occurred or appearances were observed a month after the alleged abortion does not render the evidence incompetent, though it may affect its weight. That they were not connected with the abortion we cannot presume. We cannot know that the results of the injury did not continue thus long.

The same remarks apply with greater force to the testimony of Mrs. Stebbins.

The testimony of Mrs. Chaffee, in explanation and reply to the testimony of Mrs. Morse, was clearly competent. The government had offered to show that the abortion was caused by the defendant in January. The defendant put in the testimony of Mrs. Morse tending to show that the complainant was pregnant in May. This had no other competent purpose than to show that an abortion did not take place in January. To meet this, the Commonwealth offered evidence to show a new cause

for the pregnancy in May, if it existed, to wit, sexual intercourse with the defendant. If the defendant suffered by the testimony, it is not to be overlooked that the attempt to show a pregnancy in May, as the continuation of that in January, rendered the evidence necessary for the purposes of truth and justice.

2. As to the prayers of the defendant for instructions to the jury, and the instructions given upon the subjects to which they refer.

The first prayer is as to the definition of the malice necessary to . constitute the offence. The defendant insisted that the acts must have been done maliciously; and that to be done maliciously, they must have been done either out of a spirit of wanton cruelty or wicked revenge. Under the *St.* of 1845, *c.* 27, the act would seem to be malicious if it had no lawful justification. But it would clearly be malicious if done from any wicked or base motive, and the consent of the woman or the desire to screen her or himself from exposure and disgrace would furnish no justification for the act. The instructions of the court upon this point were certainly sufficiently favorable to the defendant.

The court was also requested to instruct the jury that a lawful justification " would exist if the child with which Sarah Chaffee was pregnant was not a live child." If by this was meant that the mother had not reached the stage of pregnancy in which she would be " quick with child," and when to procure an abortion would be an offence at common law, the prayer in our opinion misconceives the purpose of the statute, which was intended to supply the defects of the common law, and to apply to all cases of pregnancy. If the defendant meant to say it would be a legal justification to show that the fœtus with which the woman was pregnant had lost its vitality so that it could never mature into a living child, we think the position correct, and that the jury should have been so instructed, if there was any evidence before the jury upon the subject. But the bill of exceptions not only fails to state that any such evidence was given at the trial or offered, but expressly negatives the fact. If there had been evidence that the fœtus had lost its

Commonwealth *v.* Wood.

vitality, it might have been the duty of the judge to say directly to the jury that if they so found, the case was not within the statute.   Upon the case made by the bill of exceptions there was no occasion for any direction on the matter.

The prayers for instructions as to the credibility of the principal witness, Sarah Chaffee, from her supposed relation to the offence as an accomplice, and the credit to be reposed in or withheld from her if she was found to have sworn falsely upon any material point, was rightly refused.   We think the court rightly instructed the jury that the woman was not under the statute technically an accomplice ; for she could not have been indicted with him for the offence.

Nor was it the duty of the court to say to the jury that if the witness was wilfully false upon any material point, they could place no reliance upon any of her testimony.   There is no absolute rule of law of this sort, nor in the nature of things could there be.   When competent evidence is before the jury, the degree of faith to be reposed in it, its effect in producing conviction, cannot be governed by any abstract and inflexible rule.   The relation of the facts the witness states to the other facts proved in the case may be such, their intrinsic probability and naturalness such, that the jury cannot help believing them. The instructions given to the jury on this subject were good law and all that the case required.

3. Under the motion in arrest of judgment, the indictment is alleged to be defective in six particulars.

The first defect does not, we think, exist.   The word " use " is not there, but the fact of the use is clearly stated.   The second defect does not exist in fact.   As to the third, it is sufficient to say that under the *St* of 1845, *c.* 27, it is not necessary to allege that the child was alive or that the woman was quick with child.   The fourth is met by the case of *Larned* v. *Com-monwealth,* 12 Met. 241.   The fifth and sixth do not exist.

*Exceptions overruled.*