# Hopkinson *et al. versus* Leeds.

1. A defendant arrested under a ca. sa. was permitted by the sheriff's deputies, for a compensation, upon presenting himself at the sheriff's office every morning, to go at large from day to day until he was discharged upon giving bond to take the benefit of the insolvent laws : *Held*, that this was a permissive escape, for which the sheriff was liable.

2. It is the duty of a sheriff to keep a defendant under a ca. sa. in safe and strict custody ; if the sheriff allows him to go at large for the shortest time, either before or after the return-day of the writ, he is liable for an escape.

3. It is not a defence that the prisoner voluntarily returned and surrendered himself to the sheriff, or that he was subsequently discharged under the insolvent laws.

4. The attorney of the plaintiff in a ca. sa. has authority to consent to defendant's discharge from arrest; if he does, the sheriff is not responsible for an escape. To discharge the sheriff, the evidence of the consent should be clear, direct and positive.

5. A prisoner under a ca. sa. having been permitted by the sheriff to go at large, a subsequent assent of the plaintiff's attorney to his remaining at large would not relieve the sheriff.

6. Cross-examination must be confined to matters as to which the witness has been examined in chief, or to such questions as may tend to show the bias and interest of the witness.

February 19th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia :* Of July Term 1873, No. 43.

This was an action of debt, commenced October 17th 1871, by Thomas B. Hopkinson, Edward A. Foggo and Anne H. his wife in her right, Alden C. Scovel and Emily his wife in her right against William R. Leeds.

. The cause of action was that the defendant, who was sheriff of Philadelphia, had permitted the escape of one P. F. Cooper, whom he had arrested under a capias ad satisfaciendum issued by the plaintiffs.

On the trial, December 9th 1872, before Briggs, J., the plaintiffs gave in evidence a writ of capias ad satisfaciendum issued by them

[Hopkinson *v*. Leeds.]

on a judgment against Cooper. The sheriff's return was : "C. C. and the defendant discharged on entering bonds in the office of the prothonotary of the Court of Common Pleas of Philadelphia for the benefit of the insolvent laws."

They then called James E. Salter, a clerk of the defendant as sheriff. He testified that the ca. sa. against Cooper came into the sheriff's hands December 29th 1870, at 11 o'clock A. M.

On cross-examination he said that Charles Hart, Esq., was plaintiffs' attorney.

Under objection by plaintiffs and exception, he said : " No instructions were given when the writs came to hand. After the writs had been in the hands of the sheriff for a day or two, witness asked Mr. Hart whether Cooper, who was then in the sheriff's office in custody, should be sent to prison ; Mr. Hart said there was no necessity of that ; if the deputy would press him he or his friends would find the money."

Under objection and exception by the plaintiffs, witness said that he was present at a conversation between Mr. Cooper and his counsel, the counsel of the plaintiffs, and Mr. Gilpin, the counsel of the sheriff, about the 14th of January 1871 ; the conversation took place in consequence of the receipt of a certificate of Cooper's petition in bankruptcy. Cooper's counsel urged his discharge, and threatened to hold the sheriff responsible. Mr. Hart said he did not think the certificate a supersedeas to the execution ; Mr. Gilpin was of opinion he could not discharge him, said he would look into the matter and give the sheriff instructions. Cooper was then in custody.

Cooper, called by the plaintiffs, testified that he was arrested at his house by McBride, a deputy of the sheriff, who directed him to go with him to the sheriff's office ; they went and he remained there the greater part of the afternoon ; he was placed then in the hands of Stokes, another deputy ; late in the afternoon he returned to his home in the custody of another deputy named Ruth, at the instance of the sheriff without Cooper's request. Ruth remained with him a portion of the evening ; went out and returned and remained with him till bedtime and then left his house ; witness was not locked up nor left in the custody of any one. Ruth came to the house about 9 o'clock next morning ; witness went to the sheriff's office with him and remained there until a late hour of the day ; it was then agreed between the witness and the deputies, that he might go, but must present himself there every day ; he went home that day not in charge of an officer. Afterwards he went to the sheriff's office every morning and stayed there irregular lengths of time during each day, until he filed his bond in insolvency. There were $70 paid to the deputies for allowing him to go to his house in this way. Mr. Hart, the plaintiff's attorney, was present when witness was taken under the ca. sa. Witness was not discharged by rea-

[Hopkinson *v.* Leeds.]

son of the proceedings in bankruptcy. Afterwards, being in custody of one of the deputies of the sheriff, he was discharged upon entering into bonds before the prothonotary of the Court of Common Pleas to take the benefit of the insolvent laws.

The plaintiffs rested, and on motion of the defendant the court Briggs, J., directed a non-suit, which the court in banc refused to take off.

The plaintiffs removed the record to the Supreme Court by writ of error.

They assigned for error :—

1. Permitting defendant on cross-examination to ask Salter, plaintiffs' witness, if instructions were given by plaintiffs' counsel as to executing the writ.

2. Permitting same witness on cross-examination to detail a conversation between himself and plaintiffs' attorney, a day or two after the writ had come into the sheriff's hands.

3. Permitting witness on cross-examination to detail a conversation about the 14th of January 1871, between Cooper, his counsel, the plaintiffs' counsel and the sheriff's counsel.

4. Ordering a non-suit, and the refusal of the court in banc to take it off.

*J. C. Longstreth*, for plaintiffs in error.—The questions objected to were not proper on cross-examination. The purpose was to contradict the sheriff's return, which it was incompetent for him to do : Shewel *v.* Fell, 3 Yeates 17. If the sheriff allow a defendant arrested on a ca. sa. to go at large for the shortest time, without the plaintiff's consent, he is answerable for an escape : Watson on Sheriffs 135 ; Shewel *v.* Fell, 4 Yeates 47 ; Karch *v.* Commonwealth, 3 Barr 271 ; Smith *v.* Commonwealth, 9 P. F. Smith 320. Although the Act of February 14th 1730, sect. 14, 1 Sm. Laws 186, 1 Br. Purd. 775, pl. 1, recognises the right of the sheriff to keep a prisoner on civil process out of jail for a limited time, still he must keep him in *salvâ et arctâ custodiâ.* Recaption is not an answer to a voluntary escape : Whiting *v.* Reynel, Croke Jac. 659 ; Hawkins *v.* Plomer, 2 W. Black. 1048 ; Boynton's Case, 3 Rep. 44. A discharge under the insolvent laws is no defence : Wolverton *v.* Commonwealth, 7 S. & R. 273 ; Shuler *v.* Garrison, 5 W. & S. 455.

*G. Junkin* and *C. Gilpin*, for defendant in error.—If the going at large is with plaintiffs' consent, there is no cause of action : Vigers *v.* Aldrich, 2 Burr. 2482 ; Scott *v.* Seiler, 5 Watts 235. A re-arrest and discharge under the insolvent laws are a defence to an action for escape : Catherwood *v.* Fisher, 2 Penna. Law Jour. 396.

[Hopkinson *v.* Leeds.]

Mr. Justice WILLIAMS delivered the opinion of the court, October 18th 1875.

This was an action of debt, for an escape of the plaintiffs' debtor, after his arrest by the sheriff upon a writ of capias ad satisfaciendum. On the trial, a judgment of non-suit was entered against the plaintiffs, and the court in banc refused to set it aside. If there was no sufficient evidence to maintain the action, the judgment of non-suit was rightly entered; otherwise the case should have been submitted to the jury with the proper instructions. It appeared from the debtor's own testimony, that he was permitted by the sheriff's deputies, upon presenting himself at the sheriff's office every morning, to go at large until the next day from the time of his arrest until he gave bond for his discharge under the insolvent laws, and that for this indulgence he and his nephew paid them the sum of seventy dollars. This was clearly a permissive escape, for which the defendant was answerable. It is true, that under the Act of 14th of February 1729–30, § 14, 1 Sm. Laws 186, the sheriff was not bound to commit the prisoner to jail immediately upon his arrest, but it was his duty to keep him in safe and strict custody, and if he allowed him to go at large for the shortest time, either before or after the return day of the writ, without the consent of the plaintiffs, it was an escape for which he was liable. It is no answer to the escape that the prisoner voluntarily returned and surrendered himself to the custody of the sheriff, or that he was subsequently discharged under the insolvent laws. But it is insisted that he was allowed to go at large after his arrest, with the consent of the plaintiff's attorney. Undoubtedly the attorney had authority to consent to his discharge from the arrest, and if he did, the sheriff is not responsible for an escape. But to warrant the judgment of non-suit, the evidence of such consent should be clear, direct and positive, and a part of the plaintiff's case. The only evidence, tending to show the alleged consent, is the testimony of the sheriff's clerk, who was called by the plaintiffs to prove the time the writ came to the sheriff's hands. On his cross-examination, under exception by the plaintiffs, he said: " After the writ had been in our hands a day or two, I had a conversation with Mr. Hart (the plaintiffs' attorney) on the subject. I asked Mr. Hart in the vestibule, between our office and the register's, what we should do with Mr. Cooper; whether we should send him to prison or not? Cooper was then in the sheriff's office in custody. He said there was no necessity of that, but if the deputy would press him, he or his friends would find the money or pay the money." It cannot be pretended that there is anything in this language showing an express consent by Mr. Hart that the prisoner might go at large; and if not, is there anything from which such permission may be fairly implied? If he said there was no necessity of sending Cooper to prison, in answer to

[Hopkinson *v.* Leeds.]

the inquiry of the sheriff's clerk, does it follow that he intended to consent to his discharge from the arrest? If so, why did he say in the same breath, and as a part of his answer, that if the deputy would press him he or his friends would find or pay the money? How could the deputy " press him " if he was allowed to go at large? But whether he could or not, it is clear that the proper meaning and interpretation of the language was a question for the jury, and not a matter of law for the court. Besides, the evidence shows that the prisoner was permitted to go at large before the conversation took place, and if so, the subsequent assent of the plaintiffs' attorney to his being and remaining at large, even if it had been expressly given, would not release the defendant from his liability to the plaintiffs in this action: Scott *v.* Seiler, 5 Watts 235. But the testimony as to the conversation was no part of the plaintiffs' case, and it was improperly admitted in evidence on the cross-examination of the plaintiffs' witness. The rule is well settled that the cross-examination should be confined to matters in regard to which the witness has been examined in chief, and to such questions as may tend to show the bias and interest of the witness. To permit the defendant, under the guise of a cross-examination, to give evidence in chief, is not only disorderly, but unfair to the plaintiffs. Here the defendant was allowed, on the cross-examination of the plaintiffs' witness, to give evidence upon which he relied to defeat the action, before the plaintiffs had given any evidence tending to show that the prisoner had been permitted to escape after his arrest. Doubtless the defendant had a right to ask the witness on his cross-examination, what instructions were given by the plaintiffs' attorney at the time the writ of ca. sa. was placed in his hands, for if any instructions were given, they were part of the *res gestæ ;* but he had no right to examine him in regard to conversations which he had with the plaintiffs' attorney after the debtor's arrest under the ca. sa., for they were no part of the matters in regard to which he was examined in chief. But whether they were proper subjects of cross-examination or not, the judgment of non-suit was clearly erroneous.

Judgment reversed, and a *procedendo* awarded.