## Commonwealth of Pennsylvania *v.* Richard W. Bell, Appellant.

*Courts—Power to call in judges from another district—Constitutional law.*

There is no question as to the right of the president judge of any court of this commonwealth to call for the services of another judge of any court of common pleas of this commonwealth to try causes or to transact any business which may come before such courts at any regular or adjourned court or in vacation. The presumption is where no record is made, that the visiting judge was called in pursuance of, in conformity with, and for the purposes designated by the several acts of assembly conferring such powers upon the judges of the lower courts.

The Act of March 24, 1887, P. L. 14, is constitutional; this question was virtually determined in Re Application of Judges, 64 Pa. 33.

*Constitution of Pa.—Substitution of judges.*

Another judge learned in the law can be substituted for the president of oyer and terminer and general jail delivery under the power contained in art. V. sec. 4, of the constitution of Pennsylvania.

*Constitutional law—Terms of oyer and terminer—Act of 1881.*

The Act of June 10, 1881, P. L. 113, is constitutional and can properly be construed to extend a term of criminal court beyond one week.

*Evidence—Criminal law—Victim of abortion not an accomplice.*

A woman upon whom an abortion has been committed is not a particeps

criminis subject to the restrictions and caution which govern and control the testimony of an accomplice.

*Evidence—Criminal law—Proof of bias and hatred on cross-examination.*

A party may always put such questions to a witness in cross-examination as tend to show his favor or bias toward the party calling him. Proof of an attempt to blackmail, in connection with the very case being tried, on the part of a witness is proper to be submitted to the jury as it may affect the witness' credibility

Argued Feb. 15, 1897. Appeal, No. 137, April T., 1897, by defendant, from judgment and sentence of Q. S. Lawrence County, September Sess., 1896, No. 51, on verdict of guilty. Before WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Indictment for abortion. Before S. H. MILLER of the 35th judicial district, specially presiding.

Verdict of guilty and sentence thereon to pay a fine of $500 cost of prosecution and undergo imprisonment in the western penitentiary for four years and two months.

*Errors assigned* among others were (1) in rejecting the offer of defendant in cross-examination of Mrs. Floyd Lawman, as per bill of exceptions following:

"Defendant's counsel propose, in further cross-examination of witness, Mrs. Floyd Lawman, to ask whether, after the premature birth, and before the commencement of the prosecution in this case, and while the fact of the miscarriage was known only to the witness, her sister, Mrs. W. B. Wood, Daisy Kirker and Dr. Covert, she, in company with Mrs. W. B. Wood, did not go to the office of Dr. Bell and together there demand of him two thousand dollars, or other sum, to settle this alleged crime, and then and there threatened to prosecute him, or that he would be prosecuted if he did not pay; and also to further ask the witness whether in the same conversation they did not tell the defendant, as inducement to him to pay or settle the case, that the fact of the miscarriage was known only to themselves, their sister Daisy, and Dr. Covert."

This for the purpose of affecting the credibility of the witness, if she answers in the affirmative and also for the purpose of affecting her credibility by contradicting her if she answers in the negative.

Objected to by counsel for commonwealth for the reason that the witness and Mrs. W. B. Wood are not interested in this case, the father being the prosecutor. That the offer is not part of the res gestæ, and is in reference to a matter subsequent to the commission of the offense; that it is not cross-examination, the witness named having been examined in chief in reference to the delivery of the children and without reference to defendant or any connection he had with the offense alleged in the indictment; that the offer is irrelevant, immaterial and incompetent, and in reference to such matter that cannot be used for the purposes offered. Also, that the offer charges two witnesses named with a criminal offense, to wit: the compounding of a felony.

By the Court: In view of the testimony given by the witness, Mrs. Floyd Lawman, and her sister, Mrs. W. B. Wood, the court is of opinion that the proposition or offer of defendant would not be competent; that it would throw no light on the issue involved in this case, and the offer is therefore overruled, the objection sustained and an exception sealed for defendant.

(2.) In its charge to the jury in not instructing them that Daisy Kirker was, under all the testimony, an accomplice, and that it was unsafe for the jury to convict upon her uncorroborated evidence, and that her testimony should be corroborated in some material part to affect defendant and connect with the offense.

(3.) In making no comment whatever upon the subject of the credibility of Daisy Kirker, in view of her relation to this crime as shown by her testimony.

(6.) The court of quarter sessions, at which the defendant was tried, was unlawfully held, and was without jurisdiction to try the defendant for the following reason:—

By the standing order of court made in pursuance of the act of assembly of March 18, 1875, P. L. 28, authorizing the judges "to make an order fixing the number of the regular terms of the said several courts, and establishing the time of holding the same," one of the regular terms for holding the courts of Lawrence county was to commence on the first Monday of December and to continue for a period of two weeks; that the two weeks during which the courts for the December term, 1896, in said county, would be lawfully held had expired on Saturday,

December 19, 1896; that on Saturday, December 19, 1896, the court, Hon. W. D. Wallace presiding, made an order as follows, to wit: "In Re Continuing, Dec. Sess., etc., for one week. Now Dec. 19, 1896, the court being of opinion that the same is necessary, do order that the present term and sessions of the court of oyer and terminer and general jail delivery, and court of quarter sessions of the peace of Lawrence county be and the same are hereby continued during the next succeeding week, commencing Monday, December 21, 1896, at 10 A. M., and it is further ordered, that the general panel of jurors now in attendance at the present regular term and sessions of said court be, and the same are hereby detained during said one week, and all parties, defendants, prosecutors and witnesses, are required to attend during said week without further order unless sooner discharged."

There is no statute or law known to defendant's counsel authorizing such enlargement of the said December term, unless it be the act of the 10th June, 1881, in which there is a proviso that " the provisions of the act should not apply to cities of the first class." The trial was not commenced until December 23, 1896, nor the verdict taken thereon until the 28th, being Monday of the following week.

(7.) The court at which defendant was tried was unlawfully held for the following reason:—

The county of Lawrence constitutes a separate judicial district—the 53d, having one judge learned in the law. Hon. Wm. D. Wallace was duly elected and commissioned as such, his term of office commencing on the first Monday of January, 1895. The court in which defendant was tried, during the whole of the trial, was held and presided over by Hon. Samuel H. Miller, the duly elected and commissioned judge of the 35th judicial district, composed of the county of Mercer. That the records of the courts of Lawrence county contain no order or anything whatever showing by what right or for what reason, or by what authority the said Hon. S. H. Miller came to preside at this time over the court of quarter sessions of Lawrence county. No reason of interest or relationship or sickness existed which would have prevented the Hon. Wm. D. Wallace from trying the case. If it should hereafter appear that the said Samuel H. Miller was requested by the president judge of the 53d dis-

trict to try the case in order to assist, under the provisions of the act of 1887, because of the opinion of the latter that the proper dispatch of business required it, then the said act of 1887 is unconstitutional and void.

*S. W. Dana* of *Dana & Long,* with him *D. B. & L. T. Kurtz, S. P. Emery* and *A. J. Gillespie,* for appellant.

*Robert K. Aiken,* district attorney, for appellee.

OPINION BY REEDER, J., April 12, 1897 :

There can be no question of the right of the president judge of any court in any district of this commonwealth to call for the service of another judge of any court of common pleas of this commonwealth to try causes or to transact any business which may come before such courts at any regular or adjourned court or in vacation. The presumption is where no record is made that he was called in pursuance of, in conformity with, and for the purposes designated by, the several acts of assembly confering such powers upon the judges of the lower courts. Hence the nunc pro tunc order made by the president judge of Lawrence county was unnecessary. That order was however made and indicates that Judge MILLER was called to hold the court of quarter sessions of Lawrence county at which this case was tried because in Judge WALLACE'S opinion the proper dispatch of the business of that court required it. The order indicates that he held this court by virtue of the Act of March 24, 1887, P. L. 14. This act appellant argues is unconstitutional. He claims that as the constitution provides that as the election of judges is to be by the qualified electors of each district over which they are to preside, there is no authority in the legislature to delegate to any one the selection of a judge to hold court in a district in whose election the electors of that district had no voice. If this contention were sustained by us it would render nugatory every act of assembly upon our books of statutes relative to the holding of courts by judges in any district save their own; and in the event of disability because of illness or from any other cause would effectually stop the administration of the law through the courts until the recovery of the judge of the district from such inability. A result to be deplored. But yet if there

is no power under the constitution to enact such legislation no matter what the result might be, it would be our duty to declare the law. This question was virtually determined by the Supreme Court of this state in Re Application of the Judges, 64 Pa. 33. The question there arose under the Act of April 2, 1860, P. L. 552, which provided that "In case of sickness of a president judge in any judicial district in Pennsylvania, or of sickness in his family or of his disability to hold the regular terms of his court in any county from any cause whatever it shall be lawful for him to call upon any other president judge of the commonwealth to hold said regular terms of court, and said president judge so called upon is hereby authorized and empowered to discharge the duties appertaining to said office as fully as the regularly commissioned president judge of said district could do if present," etc. Justice AGNEW says: "Is this act within constitutional power? We think it is, whether the act be a reorganization or the creation of a new court for special purposes. If anything can be considered settled by judicial determination it is that another judge learned in the law can be substituted for the president of the court of oyer and terminer and general jail delivery under the power contained in the 3d section of the 5th article of the constitution. . . . The power to organize the courts differently has been considered clear. Hence the number of judges may be changed and associates learned in the law constituted with the same powers as the president. The only limitations are those contained in the 9th section of the 5th article of the constitution which is in these words: 'The judges of the court of common pleas in each district shall by virtue of their offices be justices of the oyer and terminer and general jail delivery for the trial of capital and other offenders therein; any two of said judges the president judge being one, shall be a quorum.' But who the judges of the common pleas in the particular county shall be and who the particular president judge shall be who must be of the quorum will depend on the organization of the court of common pleas by the legislature. The constitution does not say that they shall be the judges *for* the county but the judges *in* the county. . . . But that the president judge of the common pleas is not unalterably the president judge of the particular county is clear, otherwise there would be no special court of common pleas to try causes in that county where

the proper president is disqualified." See also Zephon's Case, 8 W. & S. 382; In re Pennsylvania Hall, 5 Pa. 204; Kilpatrick v. Commonwealth, 31 Pa. 198; Foust v. Commonwealth, 33 Pa. 338; Commonwealth v. Green, 58 Pa. 226. Article 5, section 9 omits the words " in the county " referred to in the above case and the limitation referred to by Justice AGNEW has been eliminated from the constitution of 1874. These decisions are all under the constitution of 1838 and its several amendments. Has the constitution of 1874 any provision which breaks the force of these decisions of the Supreme Court under the earlier constitution? We think not. The same power is reserved to the legislature " to create such other courts as they may from time to time deem necessary." The provision in the constitution of 1874 " that the judges shall be elected by the qualified electors of the districts over which they shall preside " is in effect the provision of the amendment of 1850 to the constitution of 1838. I have for brevity spoken of the amendments of 1838 as the constitution. These amendments were before the Supreme Court when the constitutionality of those acts were considered by them in the cases I have just referred to, and those decisions are therefore conclusive upon that question.

It is also claimed that the court at which the defendant was convicted was held without legal authority and therefore the defendant was illegally and improperly convicted. The defendant claims that the act of June, 1881, is unconstitutional and second, it cannot properly be construed to extend a term of criminal court beyond one week. As to the latter part of the proposition we are clearly of the opinion that was the very purpose of the act and is clearly written within its terms. This is so manifest from a reading of the act as to require no discussion. The act is also clearly constitutional. The claim that the proviso excepting cities of the first class from its application renders the entire act unconstitutional because it is special legislation, is absolutely without merit. It is unnecessary for us to elaborate our opinion upon this question when the constitution itself makes a special and distinct class of the courts of cities of the first class.

Was Daisy Kirker, the woman upon whom the defendant was convicted of committing an abortion a particeps criminis and was her testimony to be received with the same restrictions

and caution as governs and controls the testimony of an accomplice? We might well rest our discussion of this question upon the facts corroborating her testimony as sufficient to carry her testimony to the jury. The Supreme Court has repeatedly said that while it is not good practice to submit a case to the jury upon the uncorroborated testimony of an accomplice, yet when the court below does so it will not reverse for that reason. Here there was abundant evidence of corroboration so that it was the duty of the court to submit her testimony to the jury even though she was an accomplice? But was she an accomplice? We can find no decision in Pennsylvania of this question, but the decisions of all the other states where this question has been directly decided, is that she is not: People v. Com., 87 Ky. 487; State v. Pearce, 56 Minn. 226; Com. v. Wood, 77 Mass. 85; Com. v. Follansbee, 155 Mass. 274; People v. Vedder, 98 N. Y. 630; State v. Hyer, 39 N. J. L. 598. We are constrained to follow these decisions and decide that the testimony of Daisy Kirker was to be governed by the ordinary rules of evidence and not those of an accomplice in so far as they relate to corroboration.

This brings us to the first assignment of error in which we find much merit. After Mrs. Floyd Lawman was examined in chief the defendant proposed to ask her in cross-examination for the purpose of affecting her credibility or for the purpose of contradicting her if she answered negatively "whether after the premature birth and before the commencement of the prosecution and while the fact of premature birth was known only to the witness Mrs. Wood, Daisy Kirker and Dr. Covert she in company with Mrs. Wood did not go to the office of Dr. Bell and together there demand of him $2,000 to settle this alleged crime, and then and there threaten to prosecute him or that he would be prosecuted if he did not pay; and also to further ask the witness whether in the same conversation they did not tell the defendant as inducement to him to pay or settle the case that the fact of the miscarriage was known to themselves, their sister Daisy and Dr. Covert." This offer was improperly refused by the learned judge of the court below. It was an inquiry going to the credibility of the witness. The motives, interest, feeling, prejudices and bias of a witness are all proper subjects of cross-examination and the testimony relating thereto

should be submitted to the jury in connection with the testimony in order to enable them to determine what weight to give it. In Cameron v. Montgomery, 13 S. & R. 127, the Supreme Court says : " A party against whom a witness is produced has a right to ask him everything which may in the slightest degree affect his credit."

" A party may always put such questions to a witness in cross-examination as tend to show his favor or bias toward the party calling him : " Ott et al. v. Houghton, 30 Pa. 451. See also, Hopkinson v. Leeds, 78 Pa. 396 ; Fulton v. Bank, 92 Pa. 112.

" Questions proper and relevant to show the capacity or intelligence of the witness are admissible : " Huoncker v. Merkey, 102 Pa. 462. See also Greenleaf on Ev., sections 446, 455 and 456.

The appellee declares that because the offer did not declare the purpose to show interest, hatred or ill-feeling, it does not fall within the ruling of the above cases. Proof of hatred, illfeeling or malice are only admissible as it may affect the witnesses' credibility. Proof of an attempt at blackmail in connection with the very case being tried on the part of a witness is surely proper to be submitted to a jury in connection with the witnesses' testimony to enable the jury to determine the witnesses' credibility. We do not say that this offer was a complete offer to prove an attempt at blackmail, but it was sufficient to go to the jury as affecting the credibility they would give to her testimony. This is not a question collateral to the issue, it goes to the root of her testimony by having the testimony offered go to the jury to have them determine whether or not under the circumstances she is worthy of credence. This assignment of error must therefore be sustained.

Judgment reversed and a venire facias de novo awarded.