Tilghman C. J.
Several weighty objections have been urged to the motion made on the part of Mr. O’Hara. The principal are these. That this’Court has no jurisdiction in civil cases, and that they have no power to try an issue in fact in any other place than the county of Philadelphia. (Act 24th February 1806, s. 1. 19.) On the other hand, it is contended, that they have jurisdiction, and also the power to try an issue in fact in this county, and that the act of assembly 24th February 1806, by which these powers are taken away, is contrary to the constitution and void. The original jurisdiction of this court in civil cases, has undergone several changes. In the act of May 1722, there are expressions which would afford strong ground for an argument in favor of an original jurisdiction. But we know very well that at the time of the revolution and long before, the Court exercised no original jurisdiction in civil actions, except the suffering of fines and common recoveries, which though actions in form, are in substance no more than conveyances of record. It was not until the year 1786, that this jurisdiction was given by an act of assembly, which confined it to the county of Philadelphia. Thus the law continued till the year 1806, when by the act of assembly before mentioned, the original jurisdiction was taken away. It has been since ^'restored in the county of Philadelphia, (act 29th March 1810,) in actions wherein the matter in con *112 troversy is of the value of five hundred dollars; and so the law stands at present.
The argument on the constitution made in the year 1790, is founded on the sixth section of the fifth article, by which it is declared, that the Supreme Court and the several Courts of Common Pleas shall, besides the powers heretofore usually exercised by them, have the powers of a Court of Chancery in certain specified cases. At the time of the making of this constitution and for some, time before, the Supreme Court exercised an original jurisdiction in the county of Philadelphia, where issues in fact were tried, both in banc and at Nisi Prius; and they issued writs of certiorari and habeas corpus throughout the state, by virtue of which actions were removed from the inferior courts, and the issues in fact arising on them, were tried at Nisi Prius, after which judgment was rendered in banc. They also exercised, at all times, a jurisdiction in issuing throughout the state, writs of mandamus and other high prerogative writs, which cannot properly be called actions, although sometimes they are used for the purpose of determining civil rights. Now it is contended, that the constitution secures to this Court every power which they had been accustomed to exercise. If so, it also secures to the Courts of Common Pleas all the powers which they had exercised. I think the argument will prove too much. It cannot reasonably be supposed, that the powers exercised by all those courts, were of so perfect a nature, as to make it worth while to guard them by a fundamental article. On the contrary, to every man of reflection, it must have been evident, that in the course of time some alterations in those powers would be necessary ; and that an attempt to render them unchangeable must end in the destruction of the constitution itself. The sixth section seems rather to have been intended to have an affirmative effect, by introducing certain chancery power’s, than the negative one contended for, of prohibiting the taking away of any powers theretofore exercised. This I am authorized in saying, after the construction put upon it, by the judges of this Court in their opinions in the case of Emerick v. Harris, 1 Binney 416. I am also authorized by the opinion which has generally prevailed, *both in the legislatux’e and elsewhex-e, since the time of the making of the constitution; for a variet]7 of laws have been made and practised under without opposition, by which material changes have been made, in the powex's both of this Coux’t and the sevei’al Courts of Common Pleas. If these laws are void, so ax’e thousands of judgments which have been rendered under them. To prove this, we need only *113 advert to the act of 20th March 1799, by which Circuit Courts were introduced, and Courts of Nisi Prius abolished in every county except that of Philadelphia. Now at the time of the making of the constitution, this Court held Courts of Nisi Prius in every county in the state, and entered judgment in banc. The Circuit Court law made a most material alteration and ordered the judgments to be entered not in banc, but in the Circuit Courts of the several counties. I could mention many other instances of an alteration of jurisdiction; but it would only be a waste of time. The constitution is undoubtedly paramount to any law emanating from acts of assembly. It ought not to be supposed, that any legislative body would violate their oaths, by a voluntary breach of the constitution. But they may do it through inadvertence or mistake. Should such a case arise and be brought judicially before this Court, they will be bound in duty to declare, that the constitution established by the people, is the supreme law of the land. It must be remembered, however, that for weighty reasons, it has been assumed as a principle in construing constitutions, by the Supreme Court of the United States, by this Court, and every other court of reputation in the United States, that an act of the legislature is not to be declared void, unless the violation of the constitution is so manifest as to leave no room for reasonable doubt. There are certain powers secured to this Court, by plain, positive, affirmative expressions. Such are those mentioned in the third section of the fifth article. Their jurisdiction shall extend over the state, and the judges shall by virtue of their offices be judges of Oyer and Terminer and General Gaol Delivery in the several counties. These powers no act of assembly can take away. Nor has the act in question (24th February 1806), attempted to take them away. I am, therefore, of opinion it is not void.
*It is next to be considered, what is the true construction of this act. It is provided by the nineteenth section, that the Supreme Court, shall have no original jurisdiction in civil cases. This was intended to take away the jurisdiction, which had been given within the county of Philadelphia by the act of 1786, and not to affect the power of issuing writs of mandamus and others of a like nature, which are not properly actions, and in which there is no trial by jury. It is said on behalf of the present motion, that an information in nature of a quo warranto is not a civil action. Certainly it is not. It is, in form, a criminal prosecution; but the practice of late years has been, to use it for civil purposes, so much so, that it has been judged proper to grant *114 new trials, which is never done in criminal cases. In fact, then, it partakes both of a civil and criminal nature. It is of so doubtful a description, that if the difficulty rested there, I should have little hesitation in saying, that it was not included in the act of February 1806; especially as I understand that the Court of Common Pleas of this district have decided, that they have no power to. order the filing of an information, so that if we have no jurisdiction, there may be a defect of justice. But then, how shall we get over that other provision of the act, by which we are prohibited to try issues in fact in banc? The advocates for the motion, say •that we ought to proceed until we-meet with this impediment; that very probably no issue in fact will arise; and that if it should, it is time enough to stop, when we come to it. To this mode of reasoning I cannot accede. It behooves the court to look to their first step, or they may find themselves placed in a very undignified situation. I cannot consent to institute a proceeding, of which I do not clearly see the end, in which the defendant may baffle us at his pleasure, by insisting on an issue in fact, which it is not in our power to try. The discussion of this question may be productive, however, of-good effect. The legislature will perceive, that there is a defect in the administration of justice, which they alone can remedy. A man who is unjustly deprived of his corporate rights, may be restored by mandamus. But considering the great number of corporations already in existence, and the great number which every year is bringing into life, it seems necessary that there should be some easy an<^ sPee^c mode, of ^removing persons from corporate offices illegally usurped. The writ of mandamus is so immediately connected with the subject of corporations, that the legislature may probably think it worth while to consider the defective manner in which that writ is applied' by the present law. "Very great improvements have been made in England both in cases of mandamus and quo warranto by statutes, which having been passed since the settlement of Pennsylvania do not extend here.
On the whole, I am sorry that the Court cannot with propriety grant Mr. O’Hara’s motion. The case however is not without remedy. There are various ways in which it may be contrived to institute an action, in which the right of the corporation to erect the market may be brought to trial.
Yeates J.
It is admitted that the information prayed for in this case, is grantable or refusable according to the sound discretion of this Court; and also that in the course of in *115 quiry, an issue in fact may eventually demand a trial by jury. If such may be the result, and reasonable doubts may occur whether we possess jurisdiction to try the isgue in fact, we should be placed in an awkward situation, by making a plunge and finding ourselves so circumstanced at last, that we must make a retrograde movement. This naturally introduces the question, w’hether we can try a matter of fact by jury in the western circuit as the law now stands ? If we cannot, it surely is most eligible to deny the present motion, and leave it to the law-making power, to provide a remedy in cases similarly circumstanced to the present.
On the one hand, it has been objected that section first of the act of 24th February 1806, prohibits us from trying issues in banc; and that by section fourth of the act of 11th March 1809, the Circuit Courts are abolished and we are only permitted to try jury causes at Nisi Prius in the county of Philadelphia.
On the other hand, it has been contended, that by section sixth of the fifth article of the constitution, the powers theretofore usually exercised by the Supreme Court are secured to them, which the legislature could not diminish as being the paramount will of the people; and that at the time of formation of the constitution, this Court was in full *possession of all the granted to them the old act of 22d May 1722. And from hence it is inferred, that the acts of February 1806, and March 1809, so far as they diminish the jurisdiction of the Supreme Court, are unconstitutional and void. This gives birth to a question of great moment.
I firmly hold the opinion which I delivered upon another occasion, (Emerick v. Harris, 1 Binn. 416), that the judicial authority have an undoubted right to declare such laws to be void and of no effect, as contravene and violate the terms of the constitution ; but that no court should exercise this power unless in plain and clear cases. ¥e should always remember that the legislative branch have taken the same oath and affirmation to support the constitution, as we ourselves have done. The latter part of the sixth section under consideration contains these words: “ And the legislature shall vest in the said courts such other powers to grant relief in equity, as shall be found necessary ; and may from time to time, enlarge or diminish those pozoers, or vest them in such other courts, as they shall judge proper for the administration of justice.” It is said those powers refer to the powers of a Court of Chancery, mentioned in the preceding part of the section; but the construction put on these words in the ease just cited varies herefrom ; and no satis *116 factory reason can be given why the powers of tbe Supreme Court and the several courts of Common Pleas should continue as they were, under all changes of circumstances, without calling a convention. Should such be the true meaning of the section, every improvement in the judicial branch is absolutely interdicted, and many of our laws made for that purpose must be erased from our statute book. The expressions in this instrument should be strong and powerful indeed to justify such an interpretation ; and I cannot bring myself to believe, that such is the true meaning of the words. I am fully satisfied that the legislature might constitutionally enact the two laws above mentioned, restricting the Supreme Court from trying jury cases in this western district; and that in consequence thereof, we possess not jurisdiction to try any matter of fact,which may arise in case the present rule is granted. The legislature alone are competent to give a * remedy, and to their wisdom it must be referred. I am of opinion that the rule prayed for should be denied.
Beackeneidge J. concurred in refusing the rule.
Rule refused.
[Cited in 5 Binn. 380 ; 15 S. & R. 132 ; 17 id. 344; 9 H. 164; 3 Gr. 107; 2 S. 58; 10 id. 79 ; 14 id. 159 ; 5 W. N. 333. Reviewed at length and approved in 8 S. 230.