1812.

Lock, qui tam &c., *against* The Estate of Lloyd.

*Philadelphia,*
*Monday,*
*December 28.*

UPON the information of *Thomas Lock*, the Escheator General issued his precept to the sheriff of *Chester* county, to impannel an inquest for the purpose of ascertaining, whether *John Lloyd* deceased, had died without heirs or known kindred, possessed of any estate real or personal in that county, and in whose hands or possession the same was; and the inquest, on the 26th of *February* last, found that he did so die, leaving monies, goods and chattels to the amount of 640 dollars 28 cents, in the hands of *Joseph Hall.*

A traverse to an inquisition of escheat must be tried by a jury, in the county where the inquisition was taken; and cannot be tried by this Court, in a summary manner, nor at *Nisi Prius* in the county of *Philadelphia*, if taken in any other county, nor by a jury summoned from the proper county. *Hence*, as this Court cannot try issues in fact out of the county of *Philadelphia*, and a traverse to an inquisition of escheat can be taken only in this Court, an inquisition taken in any other county, cannot be traversed.

*Hall* had previously taken out letters of administration to *Lloyd*, and filed an inventory; and on the 31st of *March* last, he settled his account in the Orphan's Court of *Chester*, which was confirmed on the 4th of *May*, making a balance of only 164 dollars 27 cents in his hands. On the 31st of *August*, an attachment was issued upon the inquisition, on which he paid the balance admitted to be in his hands, and gave bond according to law, to appear at this Court to traverse the inquisition, and to pay the balance, if found against him.

*Frazer* on a former day presented a petition, and moved for leave to that effect; but the Court, suggesting a difficulty in consequence of their inability to try an issue of fact, in *Chester* county, requested him to argue the point, which he now did accordingly.

He remarked, that he entered upon the argument in consequence of an intimation from the Court, on presenting the petition of the traverser, that the issue upon the traverse must necessarily be tried by a jury; but that he would endeavour to shew, that the Court might proceed without a jury; and if so, that the proceedings might be put into such shape, as would conform to the opinion of the Court. That the Court clearly had jurisdiction of the case, by the fourth and fifth sections of the " act to declare and regulate escheats,"

and that the only difficulty arose from abolishing the Courts of *Nisi Prius* and Circuit Courts in all the counties of the state except *Philadelphia.* That as the application therefore was not to extend the jurisdiction of the Court, they would sustain and decide upon it, if they possessed any powers adequate to the case, and particularly, as the traverser would be otherwise wholly without remedy.

To shew that the Court had power, he contended,

1. That the proceedings upon a petition of right, *monstrans de droit*, or traverse, do not necessarily require that the trial should be by jury. On the petition of right, the party suggests an interest in himself which does not appear upon the inquisition, and which controverts *the title of the public*; and proceedings being had to ascertain the truth of the suggestion, the merits are to be ascertained " upon issue or demurrer *as in other suits.*" 3 *Bl. Com.* 256. 260. And the traverse coming in place of the petition of right, for the greater facility of the proceeding, will, as to the mode of trial, be governed by the same rule.

Trial, which is the examination of the matters of fact in issue, may be in various modes, of which that by *record,* that by *witnesses,* and that *by jury* are applicable to the present case; 3 *Bl. Com.* 330; and as the defence suggested by the traverser, arises upon a record of the Orphan's Court of *Chester* county, there will be no difficulty in so framing the issue, as to have a trial by the record. Or if the record of that Court should not be considered conclusive, the account which it contains can be re-examined *by witnesses,* and by the usual vouchers called for by that Court. Either of these modes appears more appropriate than trial by jury to the present case, where neither the attorney general, nor escheator general, nor the informer, although noticed, make any objection, and where the only matter to be ascertained is the balance of an administration account.

2. But the act of assembly, not only does not require the trial to be by jury, but, as is apprehended, expressly directs it to be in *a summary way.* By the fifth section of the " act to declare and regulate escheats," 2 *Smith's Laws* 427, it is directed that " if there be any that claim the estate real or *personal* so as aforesaid found to be escheated, he, she or they shall be heard *without delay* upon a traverse to the office,

*monstrans de droit*, or petition of right" &c. The remainder of this section is confined to cases relating to real estates, and does not reach the present. The sixth section enacts " that if any person or persons within five years next after the " sale of such goods and chattels as aforesaid, shall make his " or her *claim in manner herein before directed*, and shall es- " tablish his or her right thereto, *as herein after provided*, he " or she shall" &c. referring for the mode of trial and deter- mination to a subsequent part of the act; and there is no subsequent part which directs the mode of determining on claims or traverses, except the seventeenth section, which relating principally to estates forfeited for crimes, enacts " that the Supreme Court shall allow of traverses and claims " (if made under the limitations herein before provided) to " such forfeited property, and decide upon the same" &c.; " and the justices of the Supreme Court or any two of them " shall hear and determine upon all and any claims as last " aforesaid in *a summary manner* as to equity shall appertain" &c. 2 *Smith's Laws* 431, 2. By which it appears, that the sixth and seventeenth sections have a direct reference to each other; the sixth to the seventeenth, for the mode of de- termining, the seventeenth to the sixth for the form of ap- plication to the Court. And by the records of claims and pro- ceedings under the seventeenth section, it will appear that the present application is exactly conformable to them; and that in those cases there was no trial by jury, but that the cases were decided upon the documents exhibited with the petition. *James' claim.* 1 *Dall.* 47.

3. If, however, the Court should think that the facts of this case must be tried by a jury, what prevents their sum- moning to the bar of this Court a jury from *Chester* county? The act of 1722, constituting the Court, grants jurisdiction and power " as full and ample as the justices of the King's Bench &c. at *Westminster* have." And although it is not contended that such a power has usually, if ever, been exer- cised by this Court, under the act of assembly, yet as such a power did exist at the time of passing the act, and is still exercised by the Court of King's Bench, as the words of the act are sufficiently broad to embrace the power, and as the remedy of the traverser must wholly fail, without the

interposition of the Court, there does not appear to be any sufficient objection against the Court's exercising this power.

4. But finally, the Court have jurisdiction of the case, and are expressly directed to decide on it. And if the act does not direct a trial by jury, nor the form in which the issue is to be joined, nor the place where the *venire* is to be laid, and the Court should be of opinion that they cannot determine the case in any of the modes already pointed out, still they are bound to decide the case. They are bound to give redress, and for that purpose to exercise such authority as is not disputed, to direct the issue to be made up in such form as that a jury may be called from the city and county of *Philadelphia*, which is the object of the specific motion before the Court.

Tilghman C. J. In pursuance of a writ issued by the escheator general, at the instance of *Thomas Lock*, an inquest was held in the county of *Chester*, who found that *John Lloyd* deceased, died without heirs, or known kindred, leaving goods and chattels to the amount of 640 dollars 28½ cents in the hands of *Joseph Hall*. The inquisition has been returned to this Court, by virtue of the act " to declare and regulate escheats," passed the 29th of *September* 1787; 2 *Smith's Laws* 425; and *Joseph Hall* appears, and desires to traverse the inquisition.

It is provided by the fifth section of the act, that the inquisition may be traversed, and the cause tried in this Court without delay. But a difficulty arises from a subsequent act of assembly, made the 24th of *February* 1806, 4 *Smith's Laws* 271, by which the authority of this Court to try issues in fact, is confined to the city and county of *Philadelphia*. The counsel for *Hall*, has proposed several expedients for trying the cause here. 1st. He asks the Court to decide without the intervention of a jury, and produces a record from the Orphan's Court of *Chester* county, by which it appears, that on a settlement of the estate of the said *John Lloyd*, by the said *Joseph Hall*, his administrator, a balance of only 164 dollars 27 cents, is found to be in the hands of the administrator. 2d. He supposes that the Court may issue a *venire* to the county of *Chester*, returnable before

themselves in bank. 3d. If neither of these things can be done, he asks a trial by a jury of the county of *Philadelphia*.

However painful it may be to perceive a defect of justice, yet when it is produced by the act of the legislature, this Court has no power to grant relief. It has been produced however merely by inadvertence, and will no doubt be remedied as soon as perceived. When a traverse is tendered to the inquisition, the cause must be tried by a jury. It is matter of *fact* which is in dispute, and there is no precedent of the Court's ever having taken the trial upon themselves. It is urged that it is a trial by *record*, because the balance in the hands of the administrator has been settled by the Orphan's Court of *Chester* county, which settlement is matter of record. But I do not conceive that settlement to be by any means conclusive. It was altogether *ex parte*, and founded on materials furnished by *Joseph Hall* himself. He made out the inventory of the intestate's estate just as he pleased, and the settlement is founded on the inventory. The commonwealth was no party, and the Orphan's Court could know nothing of the estate except what *Hall* told them. If a traverse to the inquisition should be put in, concluding with a prayer that the matter might be tried by the record of the Orphan's Court, it would be bad. But it is said, that supposing it not triable by the record, still the Court should try it by any testimony which may be produced, because the act of assembly directs that it shall be tried in a summary way. But that is a mistake. The words of the act are that the party " shall be heard *without delay*, upon a traverse to the office, *monstrans de droit*, or petition of right." There is another part of the act relating to escheats, by forfeiture upon attaint, (sect. 17,) by which it was intended to authorise this Court to hear and decide upon claims exhibited by creditors of persons attainted; but there it is expressly declared, that the justices of this Court, or any two of them, " may hear and determine upon all and any claims *as last* " *aforesaid*, in a summary manner as to equity shall apper- " tain." The different modes of expression plainly shew the difference of intention.

2. There is no precedent for summoning a jury from another county, to appear before this Court in bank. It is contrary to the provision of the act of 1722, by which this Court

1812.

LOCK
v.
LLOYD.

was established, (1 *Smith's Laws* 140), the twelfth section of which directs, that issues joined in the Supreme Court, shall be tried *in the county from which the cause was removed.* It is contrary also to the act passed the 24th of *February* 1806, by which it was enacted, that no issue in fact shall be tried by this Court in bank. This point was fully considered at *Pittsburg*, in the case of the *Commonwealth* v. *Smith*, 4 *Binn.* 117, in which we refused to grant a rule to shew cause why an information in the nature of a *quo warranto*, should not be filed against the defendant. The rule was refused, because the Court had no power to try an issue in fact in bank.

3. I need hardly add, that we cannot accede to the third proposition, of trying this matter at *Nisi Prius* in the county of *Philadelphia.* The matter arose in the county of *Chester.* The inquisition was transmitted from the county of *Chester.* It would therefore be contrary to all principle, to have the trial in any other place than the county of *Chester.* I am sorry that *Joseph Hall* should be without remedy, but the inconvenience is only temporary. I am satisfied that the legislature, which is now in session, will, upon a proper representation, pass an act authorising the County Courts of each county, to receive and determine traverses in cases of this nature.

YEATES J. and BRACKENRIDGE J. were of the same opinion.

Motion denied.