The opinion of the court was delivered by
Tilghman, C. J.
A rule was laid on the defendants, to show cause why an information in nature of a writ of quo warranto should not be filed against .them, for exercising the office of “ Trustees of the Ninth Presbyterian Church in Philadelphia.”
Before entering into the merits of the ease, the counsel for the defendants made a preliminary point, viz. that the office exercised by the defendants was a mere private matter, in which the public had no concern, and therefore not the subject of an information. This point was fully and well argued, and the court has been furnished with all the learning to be found in the books on the subject. The statute of 9 Jinn. eh. 20, not having been extended to Pennsylvania, the court must derive its power from the common law. Bull. N. P. 211. That, however, is of little importance, as the better opinion is, that the statute gave no new jurisdiction, but was made for the purpose of regulating informations, and making the remedy more effectual, easy, cheap, and expeditious, in cases of persons acting as corporation officers. An information is said to be grantable, only where the ancient writ of quo warranto would lie, and that writ, according to the argument of the defendants, was confined to cases where there was a usurpation of the king’s prerogative, or of one of his franchises, or a misuser or non user of some right or privilege granted by the crown. A franchise is a word of extensive signification. It is defined by Finch, whom.all subsequent writers have followed, to to be “ a royal privilege in the hands of a subject.” Finch, 164. Franchises are divers, says Finch, and almost infinite. Of such sort are the liberty of holding a court of one’s own; the right of warren in another’s land; the right of holding markets, fairs, and taking toll, &c. &c. The commonwealth stands in the place of the king, and has succeeded to all the prerogatives and franchises proper for a republican government, and those only; for many branches of the royal prerogative would be altogether improper in this country. Informations have been granted in England, in almost all cases where the public were interested, in some of which it'would be difficult to show, that any prerogative or franchise of the king had been invaded. As, in the case of the mayor and common council of Hertford, who took upon them to make strangers free of the corporation, without being qualified according to the charter. The reason assigned by Butter for granting this in* *131 formation, was, “ because the injured freeman of the town had no other way of remedying themselves, or of trying the right.” To be free of a corporation, was certainly no royal franchise; but perhaps, in a very large sense, it might be said that the king’s prerogative was invaded, when his charter was violated, by admitting one as a freeman contrary to its provisions, if that principle be correct, it will have an important bearing on the case before the court. An information was granted against certain persons for acting as trustees under an act of parliament for enlarging and regulating the port of Whitehaven, 1 Str. 299. The granting permission to file informations of this kind, on the application of private persons, is matter of discretion, and the court will refuse it in cases of little import, or where the injury is of a private nature. It was refused in Sir William Lowther's Case, (2 Lord Raym. 1409, 2 Kyd on Corporations, 418,) “for setting up a free warren,” on the ground that it was of a private nature, and therefore proper to be prosecuted only in the name of the attorney general, if the king should think fit. So, in the King v. Hansell, (9 Geo. 2. Cas. temp. Hardw. 247,) Lord Hardwicke thus expresses himself: “The court, indeed, have themselves made this distinction, to grant informations for public usurpations; but if it is only of a private franchise, not concerning the public government, as a fair, &c., the court has sometimes refused them, and directed an application to the attorney general.” It is observable, that Lord Hardwicke does not here deny the right of the court to grant the information, but affirms it. Whether to grant, or refuse it, in case of a churchwarden, has been a vexatious question in England, but has been finally settled against granting it. I find no instance of an information in nature of a quo warranto., in that country, except in a case of a usurpation of the king’s prerogative, or of one of his franchises, or where the public, or at least a considerable number of people, were interested. Neither do I find any case in which it has been denied, that the court may, in its discretion, grant it, where an office is exercised in a corporation, contrary to the charter. In England, the number of corporations is very small indeed, compared with the United States of America. Consequently, the quantity of that kind of business which may be brought into our courts will be much greater than theirs. But that alone is not a sufficient reason for rejecting it. .We are now to decide a general question on the right of the court; not on the expediency of exercising that right, either on the present, or any other case. Now, to establish it as a principle, that no information can be granted in cases of what the counsel call private corporations,' might lead to very serious consequences. Perhaps it may be said, that banks, and turnpike, canal, and bridge companies, are of a public nature; but yet théy have no concern with the government of the country, or the administration of justice. They are no far *132 ther public, than as they have to do with great numbers of people. But if numbers alone is the criterion, it will often be difficult to difficult to distinguish public from private corporations. Let us consider churches, for example. In some, the congregation is very numerous, in others very small. How is the court to make the line of distinction. If you say that court has the right in both cases, to grant or deny the information, according to its opinion of the expediency, there is no difficulty as to the right. But if it be alleged that there is a right in one case, and not the other, the difficulty will be extreme. I strongly incline to the opinion, that in all cases where a charter exists, and a question arises concerning the exercise of an office claimed under that charter, the court may, in its discretion, grant leave to file an information. Because, in all sueh cases, although it cannot be strictly said that any prerogative or franchise of the commonwealth has been usurped, yet, what is much the same thing, the privilege granted by the commonwealth has been abused. The party against whom the information is prayed, has no claim but from the grant of the commonwealth, and an unfounded claim is a usurpation, under pretence of a charter, of a right never granted. Having given my sentiments of the principle on which the present question turns, I will now consider the authorities in our own courts, which I think bear me out in the view I have taken of it. The first instance of an information in nature of a quo warranto, was in the year 1799, in the case of The Commonwealth v. Wray, 3 Dall. 390. The defendant exercised the office of treasurer of Cumberland county. The next reported case, is The Commonwealth v. Douglass and others, inspectors of the prison of Philadelphia, in the year 1803. The information was granted. 1 Binn. 77. In the year 1811, an information was asked and refused, in The Commonwealth v. Smith, clerk of the market of Pittsburg, 4 Binn. 117. The sole reason of the refusal was, that the Supreme Court had no right to try an issue at Pittsburgh, otherwise the information would have been granted. In 1815 an information Was granted against Liberty Browne, who exercised the office of collector of taxes in Philadelphia. The Commonwealth v. Woelper-, $c. is very much in point. There, not only was an information-granted against the defendants, who acted as vestrymen of the German Lutheran Church of Zion, but on a trial they were convicted, and judgment of ouster given against them. If it be said, that the defendants made no objection to the power'of the court, it is true; but yet it is of some weight, that the able counsel for the defendants, in a case much litigated, either did not think of the objection, or supposed it was not tenable. ' Next came the ease of The' Commonwealth v. Cain and others, vestrymen of St. Thomas’s African Episcopal Church of Philadelphia, in the year 1820, 5 Serg. & Rawle, 510: the information was granted Without objection. Last qf all was The Commonwealth v. Mur *133 ray, who claimed to be the minister of the Wesley Church, (in 1824, 11 Serg. & Rawle, 73.) There, the point now before us was directly in question for the. first time. ' The information was refused, because the party who moved for it claimed in opposition to the charter under which the defendant held. The court declined an opinion on the right to grant the information, but spoke of it as undecided, and worthy of consideration. That is the only case in which there has been any suggestion of doubt. In all the other, the right was taken for granted. From the eases cited in this argument, from the Massachusetts and New York reports, I conclude that the judges of these states are in favour of the right to grant the information. I am of opinion, that this court has the right of granting, and at the same time the right of refusing, according to circumstances.