THE STATE OF MISSOURI, *ex rel.* WILLIAM G. MCILHANY, &C., v. ELIAS C. STEWART *et al.**

*Quo Warranto.*—The Supreme Court has jurisdiction of informations in the nature of a *quo warranto;* but the granting leave to file the information at the relation of a private person, depends upon the sound discretion of the court under the circumstances of the case. Where the attorney general files an information *ex officio,* it is not necessary for him to obtain leave of the court. The parties having an ample remedy in the Circuit Court, involving no difficulties, and the Supreme Court being chiefly an appellate tribunal, it refused to allow an information to be filed to inquire into the title of the relator to act as a director of the St. Charles branch of the Southern Bank. (R. C. 1855, p. 1308.)

* This case was decided at the March term, 1861, but was not reported with the cases of that term.

*Application for leave to file an information in the nature of a* quo warranto.

*Attorney General,* with *Wood & Hunton,* for relators.

*E. A. Lewis,* and *Lackland, Cline & Jamison,* for respondent.

NAPTON, Judge, delivered the opinion of the court.

This is an application for leave to file an information in the nature of a *quo warranto.*

The information proposed to be filed and acted on states, that at an election of directors of the St. Charles branch of the Southern Bank of St. Louis, on the 11th March, 1861, the relators were duly elected, and afterwards took the oaths and qualified, according to law, for the performance of the duties of such directors ; that the defendants, who were also voted for as directors, but who did not receive a majority of the votes cast, have usurped the office of directors, and are now illegally exercising the duties thereof. A judgment of *ouster* is prayed.

Without expressing any opinion upon the merits of the application, a summons was ordered to notify the defendants, with the understanding that the court, upon the coming in of the defendants, would pass upon the questions involved in the motion.

Upon the return of the summons, a motion was made to quash the return, and upon this motion the subject has been discussed generally on both sides. The question is, has this court jurisdiction ? and if it has, ought leave to be granted ?

The jurisdiction of this court in writs of *quo warranto,* and information in the nature of *quo warranto,* is almost entirely a new question in this court. It is true that as early as 1834 this court exercised jurisdiction in a case where an information was filed against a person who was alleged to have usurped illegally the office of mayor of St. Louis (see State v. Merry, 3 Mo. 278); and at a subsequent period, in the case of the State v. McBride (4 Mo. 302), the right of a circuit judge to his seat on the bench was heard and determined in

this court, on a similar information. But in the first case there was no examination of the question, so far as the report shows; and the original papers, now on file, do not show what the character of the information was—whether it was filed by the attorney for the State on his own motion, or was an information in his name at the relation of another. In the case of Judge McBride, there seems to have been no question made of the jurisdiction of the court. So, at the last term of this court, we decided a case which was submitted upon an agreed state of facts. And in the case of the State v. Perpetual Insurance Company (8 Mo. 330), the subject was alluded to, but nothing determined in relation to the questions now involved; nor was it necessary that they should be settled.

A writ of *quo warranto* was an original writ out of chancery, directing the sheriff to summon the defendant to appear before the king, or his justices itinerant, when they should come into the county, and show by what warrant he claimed the franchise mentioned in the writ. This writ became obsolete in England with the cessation of the circuits of justices in eyre, and informations were substituted in its stead. These informations were criminal in their form and origin, but have long since been substantially and essentially civil proceedings.

There are in England three distinct classes of informations in the nature of a *quo warranto :* First, those filed by the attorney general, without leave of the court and without any relators ; second, those filed with the leave of the court, by the clerk of the crown, by virtue of his common law power; and third, informations by the clerk of the crown, on the relation of some one, and by leave of the court, under the statute of 9 Anne, c. 20.

The information filed in this case falls within the last mentioned class. The name of the attorney general is substituted for that of the clerk of the crown office in England ; but, in all other respects, the proceeding is one identical in form and purpose with that which is regulated, if not originated, by the statute of Anne.

The statute of Anne has never been in force here, nor has the statute of 4 and 5 W. & M. c. 18, which first imposed some restrictions upon the power of the clerk of the crown in filing these informations on the suggestion of private persons, by prohibiting them from being filed without an express order from the Court of King's Bench.

The statute of Anne has, however, been in substance enacted in this State as early as 1825, but the jurisdiction conferred and regulated by it is exclusively confined to the Circuit Courts. The statute seems to be designed, like the New York statute, of which it is essentially a copy, to cover the whole ground of informations in the nature of a *quo warranto*, where leave of the court was requisite. It is more comprehensive than the statute of Anne, which was confined to officers of municipal corporations, and embraces *all officers and franchises.*

The constitution has conferred upon this court the power to issue writs of *quo warranto*, and to hear and determine the same. The legislature cannot deprive this court of any jurisdiction conferred on it by the constitution. This court has already determined that the power conferred by the constitution extended as well to informations in the nature of a *quo warranto* as to the original writ, which was known as such in the common law. But it has never been decided, nor do the reports show, that there has ever been any occasion to decide, whether this court would exercise any jurisdiction over that class of informations which fall within our statute, and which even at common law required leave from the court, nor under what circumstances, if jurisdiction was entertained, leave would be granted.

Where the attorney general files an information *ex officio*, it is not necessary for him to obtain the leave of the court. But informations at the relation of private persons, whether under the statute of Anne or under our statute, or exhibited as at the common law, can be filed only by leave of the court. The information is not granted as of course, but depends upon the sound discretion of the court under the circumstances of the case.

One of the circumstances that in England and in this country materially influence the exercise of this discretion, is the absence or existence of any other remedy; and there are other circumstances, not merely growing out of the nature of the office or franchise and the position of the parties, plaintiffs and defendants, but depending on the powers and peculiar jurisdiction of the courts to which the application is made, which will influence the result of the application.

In the case of the Commonwealth v. Smith (4 Binn. 117), the Supreme Court of Pennsylvania, although invested with original jurisdiction generally, refused to entertain a motion for leave to file an information in the nature of a *quo warranto* at Pittsburgh, because it had no power to try issues in fact in that district. The C. J. (Tilghman) said: " The advocates for the motion say that we ought to proceed until we meet with this impediment; that very probably no issue in fact will arise; and that, if it should, it is time enough to stop when we come to it. To this mode of reasoning I cannot accede. It behooves the court to look to their first step, or they may find themselves placed in a very undignified situation. I cannot consent to institute a proceeding of which I do not clearly see the end, in which the defendant may baffle us at his pleasure, by insisting on an issue in fact which it is not in our power to try." Judge Gentz observed, on the same case: " It is admitted that the information prayed for in this case is grantable or refusable, according to the sound discretion of this court; and also that, in the course of inquiry, an issue in fact may eventually demand a trial by jury. If such may be the result, and reasonable doubts may occur whether we possess jurisdiction to try the issue in fact, we should be placed in an awkward situation by making a plunge and finding ourselves in circumstances at last that we must make a retrograde movement."

There is no doubt that this court is mainly intended by the constitution as an appellate tribunal. In some instances original jurisdiction has been given to it, but chiefly with a view to enable it to exercise more effectually its superintend-

ing control over inferior courts. Its power in proceedings in *quo warranto* seems to be a departure from the general policy evinced in the construction of the court. Whether this jurisdiction was designed to extend to that class of informations which, under the English statutes, had become essentially civil actions, commenced and conducted in the name of a public officer, but really for the mere ascertainment and settlement of private rights, is a question which might justify some hesitation and consideration, if it were necessary now to determine it. The legislature, it is certain, have furnished this court with none of the machinery for trying issues in fact, and in practice such trials are altogether without precedent. These informations are attended with all the forms and must progress through all the stages incident to any other writ. There are pleas and demurrers, issues in law and in fact, trials by jury, motions for new trials in arrest of judgment, and writs of error. The issue of fact by the common law must be tried in the county where the franchise is situated. (Tancred, p. 3 ; Ang. & A. on Corp., p. 870, § 762.) If such a proceeding is entertained by this court, it must be conducted solely according to the forms of the common law, for neither the statute of W. & M. nor of Anne is in force here ; nor does our own statute apply to the Supreme Court, but is exclusively confined to the Circuit Courts.

In Massachusetts and in Pennsylvania, where we find this jurisdiction exercised by their Supreme Courts, we must bear in mind that those courts are courts of original as well as appellate jurisdiction ; and in New York, where their statute, from which ours seems to be in all other respects copied, expressly authorizes the Supreme Court to entertain informations in the nature of a *quo warranto*. And the courts in all of these States are constituted on a system essentially differing from ours.

It is not necessary for this court to determine that we have no power to send an issue to St. Charles county, to be tried by a jury there, or that we cannot order a jury to be sum-

State, *ex rel.* McIlhany, v. Stewart.

moned to our bar here. There may be cases, clearly falling within the constitutional competency of this court, in which the court might find itself compelled to resort to all the powers essential to carry out the duties devolved on it, however inconvenient the exercise of such authority might prove; but where the question of entertaining a motion is one of discretion, as is admitted to be the case now, the considerations to which we have alluded must certainly be entitled to weight. When we consider that the regular business of hearing appeals and writs of error already consumes all the time of this court, and is still greatly in arrears; when we see that the court at this place is now more than three hundred cases behind the docket, it certainly would seem to be unadvisable to invite a new class of cases, hitherto unprecedented, and for the determination of which elsewhere ample provision has been made by the legislature. If parties were remediless without the interposition of this court, and the jurisdiction of the court was beyond dispute, it would be the duty of this court, notwithstanding the difficulties and embarrassments occasioned by the want of legislation, to proceed to a determination of the cause; but there is no question of the jurisdiction of the Circuit Court of St. Charles county. The parties have an ample remedy furnished by the legislature, involving no difficulties, and attended with no inconvenience to the public business legitimately devolving on this court.

We have therefore concluded that no injustice would be done to the applicants, and the public interest would be best promoted, by refusing to allow the information to be filed.