## The Commonwealth *versus* Green.

1. The legislature cannot abolish any of the courts mentioned in the 5th article of the Constitution of Pennsylvania, nor divest them of their entire jurisdiction.

2. The words in the article, "and in such other courts," point only to a partition of powers.

3. The legislature has express power to divest those courts of some of their jurisdiction and vest it in courts from time to time established, or may vest a concurrent jurisdiction in such courts.

4. The legislature can vest any portion of the jurisdiction of the Orphans' Court in a single judge of another court.

5. The constitutional provisions as to the quorum of the old courts have no application to new courts.

6. The provision of the constitution that "no commission of oyer and terminer, &c., shall be issued," has no application to a court erected by law with a general criminal jurisdiction.

7. The provision was designed to prevent the creation of special tribunals to try particular individuals or classes of cases; to serve a temporary purpose, and end with its accomplishment.

8. One Court of Common Pleas may be invested with more extensive jurisdiction than another, though in the same judicial district.

9. There is nothing in the "act to establish criminal courts for Dauphin, Lebanon and Schuylkill counties," which does not relate, and is not cognate to the establishment of a criminal court in the counties named.

10. The provision of the constitution prohibiting a bill from containing more than one subject, did not intend that the title of an act should be a complete index of its contents.

11. Under the act to establish criminal courts for Dauphin, &c., a president judge may be constitutionally chosen and commissioned and hold his office.

March 31st 1868. Before THOMPSON, C. J., STRONG, READ, AGNEW and SHARSWOOD, JJ.

This was a *quo warranto* issued on the relation of Benjamin Harris Brewster, Attorney-General, against David B. Green.

The information was filed in the Supreme Court for the Eastern District, July 3d 1867, and suggested that the defendant was occupying and claiming to occupy the alleged office of Judge of the Criminal Court of Schuylkill county, Judge of the Criminal Court of Lebanon county, and Judge of the Criminal Court of Dauphin county; and without legal warrant has been and still is exercising judicial power, and holding courts in the said three counties, and asking for process commanding him to appear and show by what warrant he claims to hold said courts, and exercise judicial powers aforesaid. The defendant in his plea set out an act, entitled "An Act to establish Criminal Courts for Dauphin, Lebanon and Schuylkill counties," approved April 18th 1867: Pamph. L. 91. The act amongst other things provided: "The said court, in each of the said counties, shall consist of one judge, learned in the law, who shall be the president judge of the district created by this act, and who shall, in all criminal matters and cases within the said district, have the like powers, jurisdiction and authority,

[Commonwealth v. Green.]

as the president judge of any judicial district of this Commonwealth, as well when holding a court of quarter sessions of the peace, and court of oyer and terminer and general jail delivery, and in vacation, in any county within his proper district; and shall, at all times, have the like power to grant writs of habeas corpus, and give relief thereupon, in all cases, as fully as any other president judge of any judicial district may or can do in similar cases. ·Each of the courts created by this act shall have, &c., full powers and authority to inquire of, hear, try and deter mine, agreeably to the laws and customs of this Commonwealth, all murders, &c., and all other offences which have been, or may be, committed within the county for which such court is created, and which would be cognisable in any court of quarter sessions of the peace, and court of oyer and terminer, within this Commonwealth, if committed within their jurisdiction; and to hear, try and determine all presentments and indictments, for any and ·all offences against the laws of this Commonwealth, committed within such county, and to sentence and punish all· persons who shall be convicted of the said offences, or any of them, agreeably to the laws of this Commonwealth, and generally do all such matters and things as any court of general quarter sessions of the peace, or oyer and terminer and general jail delivery, may or can do within the county for which such court is created by this act; and each of the said courts shall have a seal, with the arms of the Commonwealth engraved thereon, and the name of the court; * * and from and after the first Monday of June next, the jurisdiction of the Court of Quarter Sessions of the Peace, and Court of Oyer and Terminer, of Schuylkill county, over felonies and misdemeanors, shall cease and determine, and the whole of the said jurisdiction, now vested in the said court, shall be and the same is hereby vested, from that date, in the court, for the said county, created by this act; and all indictments pending, and recognisances, in the Court of Quarter Sessions of the Peace, and the Court of Oyer and Terminer, in Schuylkill county, shall be then transferred to, and be heard, tried, proceeded in and determined in the court created by this act, in the same manner, and with the same effect, as if the indictments had originally been found on the recognisances taken therein." The act further provided, that it should "be the duty of the Governor of the Commonwealth, pursuant to the provisions of the constitution, to appoint and commission a gentleman of integrity, learned in the law, to be the president judge of the district" until the first day of the following December, and that the electors of the three counties should at the next election elect a president judge for the district; that the clerks of the courts of quarter sessions, &c., in the several counties should be clerks of the new court in their respective counties: And further "all reports and returns, that are now required by law, or custom, to

[*Commonwealth v. Green.*]

be made to the courts of quarter sessions of Schuylkill county, relating to selling liquors, &c., and matters relating to roads, highways, or offences of any kind, shall be made to the courts created by this act, in Schuylkill county, at each and every regular session thereof; and the said court shall take such action thereon, as any court of quarter sessions may, or can do in similar cases. All laws relating to the issuing of *venires*, for the summoning of grand and petit jurors, or that now, or may be hereafter, in force, within the said district, are hereby extended to the courts created by this act; and the jurors shall be drawn and summoned in such numbers and like manner, as for courts of oyer and terminer, and courts of quarter sessions, and as may from time to time be ordered by the said courts, created by this act. The district attorneys, in Dauphin and Lebanon counties, shall have the power to direct recognisances to be taken, for the appearance of prosecutors, defendants and witnesses, in the courts of the counties created by this act, or in the quarter sessions of the peace of the said counties, as they may think best for the public interest. It shall not be lawful to summon a grand jury, in the present court of oyer and terminer, or quarter sessions, as now held in Schuylkill county, after the establishment of the criminal court, under this act; but the grand jury shall be selected for, and summoned to attend the criminal court in said county only; and in the counties of Dauphin and Lebanon no grand jury shall be summoned in the criminal court established by this act, but all bills shall be found in the present courts of oyer and terminer and quarter sessions, after which they may, on the written order of the district attorney, for the proper county, be removed into the criminal court for trial, or may be tried in the courts now existing in said counties at his option; and if no causes have been removed into said criminal court for trial, no traverse jury shall be summoned to attend such court."

The plea further set out that by virtue of the provisions of the constitution and the foregoing Act of Assembly he was, on the 23d of April 1867, commissioned President Judge of the district created by the act, and by virtue of that commission occupies and claims to occupy the office of judge aforesaid.

The Commonwealth demurred generally to the plea, and the defendant joined in demurrer.

*R. C. McMurtrie* and *F. W. Hughes,* for Commonwealth, cited Commonwealth *v.* Flanagan, 7 W. & S. 69; Commonwealth *v.* Zephon, 8 Id. 382; Commonwealth *v.* Martin, 2 Barr 244; Constitution of Penna., Art., 5, § 3, Purd. 10; Case of Pennsylvania Hall, 5 Barr 209; Kilpatrick *v.* Commonwealth, 7 Casey 214; Commonwealth *v.* Ickhoff, 9 Id. 80; Act of April 4th 1843, § 8; Pamph. L. 133, Purd. 765, pl. 14; Foust *v.* Commonwealth, 9 Casey 339; Parker *v.* Commonwealth, 6 Barr 507; Commonwealth

[Commonwealth v. Green.]

v. Quarter Sessions, 8 Id. 391; Commonwealth v. Painter, 10 Id. 215; Acts of March 19th 1838, § 14 *et seq.*; Pamph. L. (1837–38) 122; February 25th 1840, Pamph. L. 61; February 3d 1843, Pamph. L. 8.

*F. B. Gowen,* for defendant, cited Kremer v. Commonwealth, 3 Binn. 577; Commonwealth v. Smith, 4 Id. 117; Dyott v. Commonwealth, 5 Whart. 67; Commonwealth v. Martin, 2 Barr 244; N. Liberty Hose Case, 1 Harris 193; Hackett v. Commonwealth, 3 Id. 95; Holmes v. Commonwealth, 1 Casey 221; Case of Pennsylvania Hall, Kilpatrick v. Commonwealth, Commonwealth v. Foust, *supra.*

*Brewster,* Attorney-General.—When this case was up on the mandamus, it was my duty to sustain the law. Now, this quo warranto is here because I did not think it my duty to interpose to prevent the testing the right of Judge Green to sit. I entertain the same opinion now as then.

The opinion of the Court was delivered, July 2d, 1868, by

SHARSWOOD. J.—The question raised by the demurrer of the Commonwealth to the defendant's plea, is whether the Act of Assembly entitled " An Act to establish criminal courts for Dauphin, Lebanon and Schuylkill counties," approved April 18th 1867, Pamph. L. 91, is constitutional, so far at least as to authorize the governor to commission the defendant as president judge of the judicial district thereby erected under the name of " the first district of criminal jurisdiction." If the legislature had power to erect such a district, to provide for the election of the judge therein in the manner prescribed in the act, and to invest him with any of the powers and rights conferred upon him, we cannot sustain the demurrer, and give judgment of ouster against the defendant.

The main point of contention is whether the legislature can transfer any part of the criminal jurisdiction now vested in the courts named in the constitution, to any other court. It must be admitted that if the framers of the constitution intended to establish an unalterable judicial system, they have not expressed any such intention. The article which relates to the judiciary begins with a declaration that " The judicial powers of this Commonwealth shall be vested in a supreme court, in courts of oyer and terminer and general jail delivery, in a court of common pleas, orphans' court, registers' court, and a court of quarter sessions of the peace for each county, in justices of the peace, and in such other courts as the legislature may from time to time establish." It may be fully conceded that the legislature cannot abolish any of the courts mentioned in this article, nor divest them of their entire jurisdiction, which would practically effect the same result.

[Commonwealth *v.* Green.]

The words "and in such other courts," points only to a partition of powers. If it had been "*or* in such other courts," it might be otherwise construed. It is a case in which "and" cannot be construed "or," as it often may in statutes and other instruments when necessary to carry out the intention. It may be assumed also that this is true of the court of common pleas, although it is declared that "until otherwise directed by law, the court of common pleas shall continue as at present established." It is a provision which seems to relate to their organization, for it is immediately added, "Not more than five counties shall at any time be included in one judicial district organized for said courts." Yet all this does not affect another proposition, that the legislature have express power to divest the courts named of some of their jurisdiction, and vest it in such other courts as they may from time to time establish, or they may vest a concurrent jurisdiction in such other courts.

We are not without direct authority upon this point in a decision made by this court more than fifty years ago, acquiesced in and followed ever since, and made the foundation for legislative and judicial acts, and proceedings without number, extending to the infliction of the highest penalty which society can impose under the sanction of its laws. The case referred to is The Commonwealth *ex rel.* O'Hara *v.* Smith, 4 Binn. 117. At the time of the adoption of the constitution of 1790, the Supreme Court exercised an original jurisdiction in the county of Philadelphia, where issues in fact were tried, both in banc and at nisi prius, and they issued writs of certiorari and habeas corpus throughout the state, by virtue of which actions were removed from the inferior courts and tried at nisi prius in the different counties. They also issued writs of mandamus and other high prerogative writs throughout the state. By an act entitled "An Act to alter the judiciary system of this Commonwealth," passed February 24th 1806, 4 Sm. L. 270, it was provided that no issues of fact in the Supreme Court should be tried in banc, and that the said court should have no original jurisdiction in civil cases. By the same act the western district was created, and the judges directed to hold a supreme court at Pittsburg. A motion was made in the Supreme Court at Pittsburg for a rule to show cause why an information in the nature of a quo warranto should not be filed. It was objected that as the court was without authority to try the issue of fact which might arise, it would be idle to institute a proceeding without the power to prosecute and complete it. It was answered that the act was unconstitutional. The question was argued on behalf of the motion by Henry Baldwin and James Ross, and against it by William Wilkins. It cannot be doubted that it was ably discussed. The court, then composed of C. J. Tilghman and Judges Yeates and

[Commonwealth *v.* Green.]

Brackenridge, unanimously refused the rule.   It will be observed that the power was taken from the Supreme Court without vesting it in any other court, and it is distinctly admitted that in consequence there was no mode of removing persons from corporate offices illegally usurped.   "It is contended," said C. J. Tilghman, "that the constitution secures to this court every power which they had been accustomed to exercise.   If so, it also secures to the Courts of Common Pleas all the powers which they had exercised.   I think the argument will prove too much.   It cannot reasonably be supposed that the powers exercised by all these courts were of so perfect a nature as to make it worth while to guard them by a fundamental article.   On the contrary, to every man of reflection, it must have been evident, that in the course of time some alterations in these powers would be necessary; and that an attempt to render them unchangeable must end in the destruction of the constitution itself."   But he adds, "There are certain powers secured to this court by plain, positive, affirmative expressions.   Such are those mentioned in the third section of the fifth article.   Their jurisdiction shall extend over the state, and the judges shall, by virtue of their offices, be judges of oyer and terminer and general gaol delivery in the several counties.   These powers no Act of Assembly can take away."   This is a much stronger case than that now before us. The jurisdiction of the Supreme Court is hedged round by some guarantees which do not apply to the subordinate tribunals, either civil or criminal.   It might well be urged that the provision that the jurisdiction should extend over the state, meant the jurisdiction they possessed by law at the adoption of the constitution. But *a fortiori* has the legislature power over the inferior courts. How else can they vest any part of the existing judicial powers, civil or criminal, "in such other courts" as they may from time to time establish?   The constitutional provisions as to the quorum of the old courts have no application to new courts.   The legislature could vest any portion of the jurisdiction of the Orphans' Court in a single judge of another court; for example, the auditing of all accounts of guardians, executors and administrators. So in like manner, road, settlement and desertion cases might be taken from the Quarter Sessions and vested in a new court with a single judge.   The statute book abounds with instances in which this power has been exercised without question.   At the very period of the adoption of the constitution of 1790 there existed under the authority of the charter of the city of Philadelphia, of March 11th 1789, 2 Smith L. 451, "a Mayor's Court," composed of the mayor or recorder of the city and one or more of the aldermen, invested with all the powers of a court of quarter sessions for any county within this commonwealth.   It is not mentioned in the constitution.   The first section of the schedule declares that

[Commonwealth *v.* Green.]

all laws in force not inconsistent therewith should continue. No one ever breathed a doubt of its consistency with the constitution. It remained in the exercise of a healthful, efficient and unquestioned jurisdiction until by the Act of March 19th 1838, Pamph. L. 122, it was abolished, and a court of Criminal Sessions established, and by that act all powers and jurisdiction, as well of the said Mayor's Court as of the Court of Quarter Sessions for the city and county of Philadelphia, were vested in the court thereby established, and all pending bills and indictments in either courts were transferred thereto. This is certainly a contemporaneous exposition of the constitution which we are taught is *optima et fortissima in lege.*

It is contended that the act in question is in violation of the fifteenth section of the ninth article of the constitution, "The declaration of rights." "No commission of oyer and terminer or jail delivery shall be issued." Let it be admitted that this comprehends jurisdiction of all crimes whatever their degree and character; it has no application to a court erected by law with a general criminal jurisdiction. It was intended to prevent the creation of special tribunals to try particular individuals or particular classes of cases, tribunals to serve a temporary purpose, and to end with the accomplishment of that purpose. Such was the case of the Commonwealth *v.* Flanagan, 7 W. & S. 68. "The provision was meant," says the letter of the judges, "to secure to the commonwealth, as well as to the accused, a trial by the ordinary tribunals to the exclusion of special tribunals created for the trial of particular cases, with a view to produce a particular result." They add, "it is indeed provided by the first section of the fifth article, that the judicial power shall be vested in certain enumerated courts, and in such other courts as the legislature shall from time to time establish. But this has regard to courts established for general purposes, and to be held by judges commissioned for the purpose expressly." Certainly, as far as can be gathered from the face of the act before us, the courts thereby created were established for general purposes without limit as to time, and the judge is to be elected for the longest period prescribed for the judge of any court other than the Supreme Court, and is commissioned for these general purposes expressly.

It is objected further that this Act of Assembly violates the amendment of 1850, which provides for the election of "the president judges of the several Courts of Common Pleas, and such other courts of record as are or shall be established by law, and all other judges required to be learned in the law, by the qualified electors of the respective districts over which they are to preside or act as judges." It has not been and cannot be pretended that the letter of this article is broken. Here a special judicial district is constituted, and the president judge is to be elected by the

duly qualified voters therein. But it is said that the spirit of it is violated, because while the court for Schuylkill county is made an active and important tribunal, the provisions for the courts of Lebanon and Dauphin are contingent and illusory. The justices of Schuylkill county are commanded to make their returns to the special court. A grand jury is to be summoned to act upon the bills and other matters given them in charge, while the jurisdiction in Dauphin and Lebanon is restricted to bills found in the Oyer and Terminer and Quarter Sessions, and transferred to the special court at the option of the district attorney. Thus, in effect, the electors of Dauphin and Lebanon choose the judge for Schuylkill. With the justice, wisdom or policy of this legislation we have nothing whatever to do. There is no provision in the constitution which either expressly or by implication requires the judicial system to be uniform throughout the commonwealth. One Court of Common Pleas may be invested with much more extensive jurisdiction than another, even though of counties in the same judicial district. It is not necessary to refer to the statute book for instances. There is no reason why the same thing may not be done in regard to courts of criminal jurisdiction. However open to just criticism may be the policy of investing the prosecuting officer with the sole power of transferring indictments, and thus in effect deciding whether there shall be any special court held in Dauphin and Lebanon, we have not been pointed to any constitutional prohibition. No clause of the declaration of rights has been invoked. There is nothing in the plan to prevent or impede "a speedy public trial by an impartial jury of the vicinage." If there is to be such an election it would most accord with all our ideas of justice as well as mercy that the accused and not the accuser should have the choice of his judge. In all the civil courts of concurrent jurisdiction, however, the plaintiff in general has the right to elect his tribunal. The legistature for the same reason has seen fit in these criminal courts to give the selection to the commonwealth, through its duly chosen and accredited officers. We cannot pronounce an Act of Assembly to be void even though an unworthy partisan purpose may be apparent. We cannot inquire into the political objects which are to be attained. If by what is termed gerrymandering, either of congressional, legislative, or judicial districts, the fair will of a local majority is overridden by voters outside, the remedy is in the hands of the people, whose duty it will be to rebuke at the polls the makers of such unjust laws.

It is further objected that the act in question is contrary to the 8th section of the first amendment of 1857: "No bill shall be passed by the legislature containing more than one subject, which shall be clearly expressed in the title, except appropriation bills." The ground assigned by the Commonwealth is, that the title of

[Commonwealth *v.* Green.]

the act does not indicate many of its provisions. The title is, "An Act to establish criminal courts for Dauphin, Lebanon and Schuylkill counties." There was necessarily included in the act provisions for the appointment and election of the judge as to who should act as clerk and how and by whom the grand and common jurors should be chosen and summoned. The people, in this amendment, never intended that the title of an act should be a complete index to its contents. It may be that the amendment is only directory, and even if otherwise, only that part of the law is void which is not referred to in the title; for both which positions respectable authorities in other states, where they have a similar constitutional provision, might be cited. It is not necessary to decide these questions. There is nothing in the act which is not embraced in the title, which does not relate and is not cognate to the establishment of a criminal court in the counties named: Blood *et al. v.* Mercelliott *et al.*, 3 P. F. Smith 391. The intention of the constitutional amendment was to require that the real purpose of a bill should not be disguised or covered by the general words " and for other purposes," which was formerly so common, but should be fairly stated ; and it must be a clear case to justify a court in pronouncing an act or any part of it void on this ground.

There is one other point to be noticed, that " the act appoints a clerk who must be elected, and this means elected for the office." But this question evidently does not arise in this proceeding. In a quo warranto against the judge we cannot try the title of the clerk.

We have thus considered all the grounds of demurrer by the Commonwealth, and have come to the conclusion that none of them have been sustained.

Judgment for defendant.

THOMPSON, C. J., dissented, and delivered the following opinion :—

The Act of Assembly to establish criminal courts for Dauphin, Lebanon and Schuylkill counties, determined to be constitutional by a majority of this court, at least so far as to authorize the commissioning of a judge, is not so in my opinion ; and I will give some of the reasons for my belief, and why I differ from the majority.

The act, I think I may safely say, is the most extraordinary legislative performance on our or any other statute book. It occupies three and a third octavo closely-printed pages of the Pamphlet Laws ; is in a single section, forming but one sentence, and is without a full stop from beginning to end. This form, unlike all other precedents of statutes containing different provisions, is significant of conscious wrong intended in framing the bill, and

[Commonwealth *v.* Green.]

that its shape was designed to prevent defeat in detail by separate votes on separate sections or paragraphs. I do not mean to say that *ipso facto* this circumstance necessarily impairs the validity of the act, but does call for a severe scrutiny of its provisions.

Its provisions are no less remarkable. It ostensibly establishes three criminal courts, one in each of the three counties named, while in fact it establishes but one, and that one in the county of Schuylkill. It also provides for the appointment by the governor of a judge until the ensuing election, just as if it were a case of vacancy "happening by death or resignation," and for the election of the judge thereafter, as in other districts, by the electors of the three counties composing the pretended district.

The jurisdiction of the court for Schuylkill county is without limit both in Oyer and Terminer and in the Quarter Sessions, and is to be held and presided over by a single judge. To effectuate this completely, all criminal jurisdiction is forbidden to the constitutional courts of the county, as well as the summoning of grand juries in Dauphin and Lebanon counties. The jurisdiction of the court is made dependent solely on the option of the district attorney in each whether any court shall ever be holden therein or not. No independent clerks for these courts are provided, but the office is conferred by the legislature on those elected for the performance of similar duties in the other criminal courts of the district. This is a disregard of the express provisions of sect. 3, art. vi. of the constitution, which requires them to be elected. This disregard is not a novelty in the act; there is scarcely a provision in it that does not violate some provision or other of the constitution, as will be shown herein.

In its practical results the act is also noticeable. It was passed on the 18th day of April, A. D. 1867, and a judge was shortly thereafter appointed. In June following this court passed upon one of the main provisions of the act, holding that so far as it attempted the repeal of the criminal jurisdiction of the established and constitutional courts of Schuylkill county, it was unconstitutional and void. In July a suggestion was filed by the Attorney-General of the Commonwealth for a quo warranto to try the validity of the judge's commission under the act. During the pendency of this proceeding, the legislature at its late session, by a decided majority in both branches, passed a bill to repeal the act. This the governor vetoed, and the veto remained unacted on when the legislature finally adjourned. Thus, between the legislature and this court, the act now pronounced constitutional in some of its features, has had a precarious existence, has been of no public benefit, and, in my judgment, never will be. It is an experiment that will not work. One part of the act has been declared unconstitutional, as already said, and this part was a most material portion of the scheme of the new court. We decided that when

[Commonwealth *v.* Green.]

we held that the jurisdiction of the judges of the Common Pleas to hold Courts of Oyer and Terminer could not be taken away by an act of the legislature. I think the same objection exists as to the jurisdiction of these judges in the Quarter Sessions. It is very doubtful whether the legislature has the power to deprive them of it. Mr. Justice Rodgers seems to hold the negative in In re Pennsylvania Hall, 5 Barr 204.

As the constitution of the Common Pleas may be changed by the legislature by express constitutional provision, it is not intended to be insisted that in making such change, a change of Quarter Sessions jurisdiction might not follow; not by the establishment of an independent tribunal merely. The provision of the constitution on this subject, Art. v., § 81, is, " The judges of the Court of Common Pleas of each county, any two of whom shall be a quorum, shall compose the Court of Quarter Sessions," &c. I do not forget that the legislature may, from time to time, establish other courts than those enumerated. This the constitution says; but to establish courts in place of those enumerated, has never been decided. The experiment of a criminal court once established in Philadelphia, is no proof of the just power of the legislature on this point. Time and the people condemned it. The reminiscence is not a beacon to point to a safe harbor, but rather to avoid rocks and shoals. I hold that neither in the Oyer and Terminer, nor in the Quarter Sessions, is the jurisdiction of the constitutional courts at all to be affected by this or any like act. That as to both, the provisions of this act are unconstitutional. Nor is the instance of a mayor's court, to the purpose. That is essentially a municipal tribunal, and where it exists it tries offences in and against the corporation, which are at the same time offences against the state, and thus by usage holds criminal jurisdiction within the limits of the municipal corporation. But this act authorizes a single judge to hold Courts of Oyer and Terminer and General Gaol Delivery. A general jurisdiction. The constitution requires two judges of the Common Pleas to hold this court, one of whom shall be president of the court, who, as everybody knows, is required to be learned in the law; or two judges of the Common Pleas learned in the law, as held in Zephon's Case, 8 W. & S. 385, and in Kilpatrick's Case, 7 Casey 198. The act disregards the constitutional quorum required in Oyer and Terminer, and the material of the quorum altogether; so does it in the Quarter Sessions. And if the judge's commission gives no authority or jurisdiction in either of these courts, as I think it does not, it is a void commission.

It would be void also if it *expressly* gave authority and jurisdiction in the Oyer and Terminer. The bill of rights declares that no such commission shall ever issue. See opinion in Foust's Case, 9 Casey 338. Not being a judge of the Common Pleas, jurisdic-

[Commonwealth v. Green.]

tion in Oyer and Terminer of the judge in the new court does not inhere in his commission, and cannot be vested therein on account of the provision in the bill of rights quoted; and I am of the opinion that as the Quarter Sessions jurisdiction of the Common Pleas was not changed by the act, the commission is void, that no judicial functions can be exercised under it. If it be incurably defective, as to all these main objects of the act, as it assuredly is, I see not how it is to be regarded as a commission of vigor and authority for purposes that the legislature never intended should be the foundation of a separate commission.

The act in question purposes to constitute a criminal judicial district of three counties. In two of them jurisdiction is to be exercised not by force of the commission of the judge, but at the option and on the certificate of the district attorney. One part of the district it was intended should have a regular criminal court by force of law; in the other two-thirds, no courts are to be held unless it suits the will and pleasure of the prosecuting officer of the county.

What does the constitution provide on this subject? It provides for judicial districts, and it provides for the election of the president judges of these districts, with equal authority in every part of them. This is the plain meaning of the constitution where it says, "And all other judges required to be learned in the law (shall be elected) by the qualified electors of the respective districts over which they are to preside and act as judges," to preside by virtue of their commissions, is obviously the meaning of the provision.

Now here is a district of three counties, in two of which the judge is NOT to preside by virtue of his commission. Is this a constitutional district in which a judge can be legally elected? or that the judge elected can receive a valid commission? That involves an answer to the question, whether two counties out of three may legally elect a judge of the district to preside in one only? The obvious operation of such an act would be to establish a judicial district of one county, and to permit other counties, not in the district, to vote for and elect the judge. Will anybody say that such an arrangement could be the foundation of a valid commission? That is this case exactly and precisely. The judge has a commission for a district of three counties, but is forbidden to exercise jurisdiction in two of them, excepting as it pleases the district attorneys to allow him to do so. His authority does not exist until the option of the district attorneys is exercised, and it is not certain it will be exercised. Is the person holding the commission of judge a judge in all three counties in the mean time, in the sense of the constitution? The constitution means a presiding in the district by virtue of law, in the exercise of judicial functions. This act means something else. Are both and each of these dissimilar and opposite provisions constitutional? It

would be hard to affirm this. If it be constitutional in this district to limit and divide jurisdictions, it will doubtless be constitutional at some future time, perhaps not distant, to add Berks, Schuylkill, Montgomery and Bucks to Philadelphia, and make it a special judicial district, only to be presided in by the judges elected, at the will of the prothonotaries or clerks in those counties; an option not likely to be exercised, the election once over.

It would confound all ideas of the proper construction of the constitution to hold anything but that such an act would be a palpable violation of its provisions—a mere evasion; a thing more to be deprecated even than an open and undisguised infraction of the constitution.

I have not room in this opinion to characterize this essential revival of the old special commission system for the trial of prisoners. Its evils were known to the framers of our constitution. The history of the arbitrary and tyrannical reigns of the Charles's and James II. of England was more fresh then than now, and the effort of the framers of our constitution was to prevent its repetition. But here we have it in substance as well as resemblance. The district attorney in each of two counties in the district has power to choose between the constitutional and the alternative court, furnished by this act, before which it may be most easy to convict a prisoner, and as he decides, the new court is to be called in, or the ordinary tribunals, of which no one complains, and in which all ought to have confidence, is to have jurisdiction of the offence. Such a provision is most dangerous to the people, a flagitious violation of the principles of the constitution, and an especial infraction, in my judgment, of its provision against issuing special commissions. I am therefore of opinion that the Act of Assembly under which Judge Green claims to exercise the functions of a judge, is void and unconstitutional. I am, consequently, for giving judgment for the Commonwealth on the demurrer.