## Commonwealth ex rel. v. Larkin, Appellant.

*Municipalities—Ordinances—Appropriations.*

Where a municipality borrows money and specifically appropriates it to the creation of a bureau of filtration, it is not necessary that the money so borrowed should be appropriated over and over again by annual ordinance in case some of it should happen not to be paid out during the year; nor is it necessary that the ordinance for the raising and appropriating of such money should have been passed within the month in which by law the taxes and revenues of the city are required to be appropriated.

*Municipalities—Ordinances—Title of ordinance.*

An ordinance entitled "to create a bureau of filtration in the Department of Public Works and to provide for the employees and assistants of such bureau," is sufficient in its title to give notice that the body of the ordinance may contain provisions relative to the compensation of the employees.

Argued Nov. 14, 1904.    Appeal, No. 163, April T., 1905, by

398 COMMONWEALTH EX REL. *v.* LARKIN, Appellant.

Statement of Facts—Opinion of the Court. [27 Pa. Superior Ct.

defendant, from judgment of C. P., No. 2, Allegheny Co., Oct. T., 1904, No. 1060, awarding peremptory writ of mandamus in case of Commonwealth ex rel. Morris Knowles v. John B. Larkin, Controller of the city of Pittsburg. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Petition for mandamus.

The facts appear by the opinion of the Superior Court.

*Error assigned* was the judgment of the court.

*George W. Guthrie,* for appellant, cited: Com. v. Gregg, 161 Pa. 582; Major v. Aldan Borough, 209 Pa. 247.

*Wm. B. Rodgers,* with him *T. D. Carnahan,* for appellee.

OPINION BY MORRISON, J., March 14, 1905:

This is an appeal by John B. Larkin, city controller of the city of Pittsburg, from the judgment of the court of common pleas, No. 2, Allegheny county, awarding, at the instance of Morris Knowles, a writ of peremptory mandamus ordering the respondent to approve for payment the claim of said Knowles for salary for the month of July, 1904, as chief engineer in the bureau of filtration in the department of public works of said city.

In 1904 there was an ordinance passed, entitled: " An act to create a bureau of filtration in the department of public works and to provide for the employees and assistants in said bureau." This ordinance provided, inter alia, for a chief engineer at $333.33 per month and other employees at a total cost of about $5,000 per month.

The general appropriation ordinances of 1904 did not contain any appropriation from which the salaries of the officers and employees of said bureau could be paid, but the ordinance itself, in addition to the sections creating the bureau, specifying its powers and duties, and fixing the number, titles and salaries of its officers and employees, contained the following section: "Section 5. That the salaries and wages of the employees of this bureau and all expenses for instruments, tools,

materials and supplies for the use of said bureau, shall be and are hereby authorized to be paid out of appropriation 100, being the money available from an issue of bonds for the extension and improvement of the water supply and distribution, including the filtration of such water supply and providing and furnishing metres to be used in connection therewith." The various officers and employees specified in the ordinance, including the relator, were subsequently appointed and entered upon the performance of their duties.

In August, 1904, the respondent was requested to approve for payment the pay roll of the bureau for July, including the salary of the relator as chief engineer. Upon his refusal so to do the relator presented his petition to the common pleas showing a prima facie right to have his claim approved. Thereupon the court awarded a writ of alternative mandamus to which the respondent made answer which raised but one substantial ground for his refusal to approve the claim, to wit: " That neither prior to the time when the services for which the relator claims payment were alleged to have been rendered, nor at any time since was there any appropriation of money for the payment of same nor any appropriation from which the same could be paid." Subsequently an amendment to the answer was filed, by agreement, which attached thereto sundry ordinances designated as exhibits " A," " B," " C," " D " and " E." Thereupon the relator demurred to the answer and upon argument and consideration the court sustained the demurrer and entered judgment for the relator with costs and that a peremptory mandamus issue as provided by law.

It is contended that the only appropriation made for the payment of the relator's claim was in 1900. In that year bonds for the extension and improvement of the water supply, etc., of the city of Pittsburg had been issued and sold and the sum of $2,500,000 had been realized therefor and paid into the city treasury and of the amount thus raised there remained over $2,000,000 at the end of the fiscal year, 1900, and this sum still remained in the city treasury when the alternative writ in this case was issued and served.

In the general appropriation ordinance for the year 1900 an appropriation of the proceeds of these bonds was made by the following item : " 100. For the purpose of the extension and

improvement of water supply and distribution, including the filtration of such water supply, and providing and furnishing metres to be used in connection therewith, $2,500,000."

It is contended by the learned counsel for the respondent that the relator's claim could not be paid, among other reasons, because no appropriation was made therefor in the year 1904 and he relies on the following provisions of law : " That the said select and common councils shall, within sixty days after the passage of this act, and annually thereafter, in the month of February by ordinance assign and appropriate the revenue of the said city derivable from all sources . . . . and if such revenues shall exceed the expenditures ordered, such excess shall be paid over to the sinking fund herein authorized to be created : " Section 3, Act of April 6, 1850, P. L. 407.

By the second section of the Act of March 19, 1873, P. L. 317, it is provided : " That the councils of the said city of Pittsburg shall hereafter make the appropriations during the month of January or February, in each and every year, in the manner prescribed by the said act of April 6, 1850." By the 4th section of the Act of April 11, 1862, P. L. 501, it is provided : " All revenues not otherwise appropriated or unexpended balances of the regular appropriations shall become a part of the sinking fund of said city as provided by act of April 6, 1850."

By the 1st section of the Act of January 30, 1895, P. L. 3, it is provided : " So much of section 4 of an act . . . . approved April 11, 1862, reading as follows, namely, all revenues not otherwise appropriated or unexpended balances of the regular appropriations, shall become a part of the sinking fund of said city, be and the same is hereby repealed."

By section 5 of article 14 of the Act of March 7, 1901, P. L. 20, a general act governing all cities of the second class, it is provided as follows : " All taxes shall be levied and appropriations made annually by general ordinance prior to the first Tuesday of February, except such taxes as may be levied and appropriations as may be made to provide for the payment of the principal and interest of any bonds to be issued, and except also in case of emergency, when on a certificate signed by the city recorder and controller that such emergency exists a special appropriation may be made to meet the same."

By the Act of May 23, 1874, P. L. 230, a general law governing all cities, it is provided as follows: "No bill shall be passed containing more than one subject which shall be clearly expressed in its title" (section 3). "No money shall be paid out of the city treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof" (section 7). "No ordinance shall be passed except · by two thirds vote of both councils and approved by the mayor giving any extra compensation to any public officer, servant, employee, agent or contractor after services shall have been rendered or contract made, nor providing for the payment of any claim against the city, without previous authority of law; and any officer drawing any warrant, or passing any voucher for the same, or paying the same, shall be guilty of a misdemeanor, and on conviction thereof, be punished by a fine not exceeding $5,000 and imprisonment not exceeding one year" (section 5).

Paragraph 5 of section 1 of article 8 of the Act of March 7, 1901, P. L. 20, provides: "If any warrant presented to the controller contain an item for which no appropriation has been made or there shall not be a sufficient balance of the proper fund for the payment thereof, or which for any other cause shall not be approved, he shall notify the proper department of the fact; and if the controller shall approve any warrant, contrary to the provisions hereof, he and his sureties shall be individually liable for the amount of the same to the holder thereof."

It is upon the foregoing provisions of law that the learned counsel for the respondent bases his argument in justification of the controller in refusing to approve the relator's claim.

It is vigorously contended, in the argument for appellant, that the fund which was raised on bonds for the special purpose of creating a water plant for the city of Pittsburg and specifically appropriated for that purpose by item 100 in appropriation ordinance approved March 3, 1900, has been diverted from the special purpose for which it was raised and has passed into the general sinking fund, under the terms of the Act of 1850, P. L. 407. If this position is sound it shows a remarkable condition of affairs. The people of Pittsburg by vote authorized the issuing of bonds to provide a fund for the establishment of a water supply. This fund was raised and specifically appropriated for that purpose, and yet it is contended that the act of

1850 has legally placed it in the sinking fund of the city, and thereby forever withdrawn it from the control of the city for the purpose of accomplishing the very thing for which it was raised. In view of the constitution of 1874, and the subsequent legislation in regard to cities, general and class, we are not satisfied that the act of 1850 is now in force. But whether it is or not, we are of the opinion that the learned court below reached a correct conclusion in holding that the acts in regard to annual appropriation being made by general ordinance have no application to the expenditure of moneys raised by loans made for specific purposes. The learned court said : " There seems to be no reason why moneys raised for a particular purpose and dedicated to that purpose, should be appropriated over and over again by annual ordinance, in case some of the money so borrowed should happen not to be paid out during the year."

When the city borrowed the money and specifically appropriated it to the creation of the bureau of filtration, it is difficult for us to see how this money could find its way into the sinking fund. And it is just as difficult to see the necessity for an annual appropriation of the money for the very purpose for which it was raised and specifically appropriated in 1900.

The learned court in referring to the act of 1874 and the act of April 6, 1850 and the act of April 11, 1862, in reference to all unexpended balances of the regular appropriations becoming part of the sinking fund of the city, said : " It is claimed by the defendant that these provisions require an annual appropriation to be made in February of moneys raised by loans made for specific purposes as well as the annual revenues of the city derivable from taxes and other like sources. The relator claims that the provision for annual appropriations in the act of 1901 applies only to the taxes levied, spoken of in the same section, and that the act is to be interpreted as if it read : ' all taxes shall be levied and appropriations of these taxes made annually,' " etc. The provision of the act of 1901 referred to reads : " all taxes shall be levied and appropriations made annually by general ordinances, prior to the first Tuesday of February, except such taxes as may be levied and appropriations as may be made to provide for the payment of the

principal and interest of any bonds to be issued, and except also in cases of emergency," etc. We quite agree with the learned court in its interpretation of the meaning of this language. We cannot believe it requires an annual appropriation of money raised, appropriated and dedicated to a specific purpose.

A careful examination of the acts of assembly referring to the sinking fund does not convince us that even if the act of 1850, and all subsequent legislation upon this subject, both before and since the constitution of 1874, remain in force, their effect would be to carry the money in question into the general sinking fund of the city.

We are of the opinion that the appropriation of the water supply fund, designated as item 100 in the ordinances of 1900, was a sufficient appropriation of the money. But if this is not correct, then the ordinance of March 28, 1904, creating the bureau of filtration and directing the payment of salaries out of the fund in question is a sufficient appropriation to warrant the payment of the relator's claim for the month of July, 1904. That ordinance fixed the amount of the relator's salary per month and authorized its payment out of item " 100, being the money available from an issue of bonds for the extension and improvement of the water supply and distribution," etc.

Two objections, however, are made to this ordinance. (1) That it was not passed in February; and (2) that it contains two subjects. It is argued, that " the purpose and object of the ordinance was the creation of a new bureau in the department of public works and to provide for officers and employees therein, and this purpose was clearly set forth in the title of the ordinance." " But the appropriation of the money to pay the salaries of the officers and employees of the bureau was a separate and distinct matter; and, moreover, is not clearly set forth in the title."

The language used in the title is: " To create a bureau of filtration in the department of public works and to provide for the employees and assistants of such bureau." We have given the argument of the learned counsel careful consideration but it does not convince us that this act contains two subjects nor that the subject thereof is not sufficiently indicated by the title. An act to create a bureau in the department of

public works and to provide for the employees and assistants of such bureau, seems to us to indicate quite clearly not only that there are to be employees and assistants but that they are to be provided for. We think a person reading this title would have sufficient notice that the body of the act might contain provisions relative to the compensation of the employees. The leading subject or object of the act is the creation of the bureau and the provision for the employees thereof, and the payment of their salaries is, in our opinion, part of the subject.

It may be conceded that the compensation of these employees might have been provided for in a separate appropriation bill. But it does not follow that it could not be provided for in the bill creating the bureau. If there are two subjects in the act it would be invalid and mentioning both subjects in the title would not help the matter. If there is but one subject, which we think is the case, then we have no doubt but what it is sufficiently indicated by the title. There are so many decisions of the Supreme and Superior courts upon this subject that we will only undertake to refer to a few of them : Pittsburg v. Daly, 5 Pa. Superior Ct. 528; MacKellar v. Seeds, 10 Pa. Superior Ct. 167; Allegheny Co. Home's Appeal, 77 Pa. 77; Commonwealth v. Green, 58 Pa. 226 ; State Line & Juniata Railroad Co.'s Appeal, 77 Pa. 429; Mauch Chunk v. McGee, 81 Pa. 433.

As to the objection that the ordinance was not passed in February we consider it without merit. We have already seen that the money was raised, appropriated and dedicated to a specific purpose and that it is not included within the provisions of law requiring the taxes and revenues of the city to be appropriated annually in the month of February. In our opinion the relator established his case by showing that the fund was borrowed for a specific purpose and appropriated and dedicated to that purpose by ordinance duly passed, and when his claim was presented to the respondent it should have been approved in the absence of any allegation that it was fraudulent, or what is the same thing, that it had not been earned, and authorized to be paid by the councils. In view of the situation disclosed by the petition and answer, we think the duty of the respondent was narrowed down to the question of the merits of the relator's claim. If he had earned the money, in view of the prior

action of the councils, it only remained for the respondent to approve the claim. The action of the councils in raising $2,500,000 and placing the same in the city treasury for the purpose of securing a water supply, etc., several years before it was needed, may or may not be open to criticism. Be that as it may we discover nothing in the case, as presented, sufficient to justify a denial of the relator's claim for payment of his salary as set forth in the petition.

The assignment of error is dismissed and the judgment is affirmed.